## ESTATE OF J. B. CUNNINGHAM, DECEASED.

APPEAL BY H. G. WILSON ET AL. FROM THE ORPHANS' COURT OF WESTMORELAND COUNTY.

Argued October 7, 1890—Decided November 3, 1890.
[To be reported.]

| 137 | 621 |
|---|---|
| 195 | 79 |
| 137 | 621 |
| 28 SC | ³476 |
| 137 | 621 |
| 38SC | ⁴500 |
| 137 | 621 |
| f225 | ¹524 |
| 225 | ³526 |

1. The widow of a testator must make her choice between acquiescence in her husband's disposition of his property, and the assertion, in disregard thereof, of the rights which the law gives her; she cannot take both these courses or parts of each.
2. The necessity of making such a choice, and its effect, do not legally depend in any degree upon the quantum of benefits she receives or renounces under the will, nor upon the mention or omission of her name or the presence or absence of any provision for her therein.

Statement of Facts.

3. When a testator by his will directs the sale of his real estate, and his widow elects to take her rights under the intestate law, as to her there is no will and no conversion, and she cannot assert such rights against the proceeds of the converted real estate as personalty.

4. As the widow's rights are paramount to her husband's power of disposition, she can claim, at her election, her statutory estate in his land, as such, and in law it is this only to which she becomes entitled, as realty, upon electing to take against the will of her husband. .

5. In equity, however, by acquiescing in a sale made by the executor under a power in the will and claiming the proceeds, she may cause the land to pass to the purchaser discharged of her dower, and may thus become entitled to a corresponding interest in the proceeds of such sale.

6. When a widow is claiming, upon a distribution in the Orphans' Court, adversely to the will of her husband, the question whether a formal paper, electing to take against the will, was filed by her voluntarily or under stress of an order of court, is immaterial; such a writing is unimportant except as evidence.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 50 October Term 1890, Sup. Ct.; court below, No. 15 May Term 1889, O. C.

On May 25, 1889, William Household, executor of the will of J. B. Cunningham, deceased, filed an account, charging himself with the proceeds of certain real estate, sold by him under a power conferred by said will, amounting to $10,700, and taking credit for certain costs and expenses. The account having been confirmed, *Mr. Jacob Turney* was appointed auditor to distribute the balance exhibited thereby in the hands of the accountant.

The auditor made a report and a supplemental report, finding the following facts:

The accountant's testator, J. B. Cunningham, died on March 7, 1886, owning valuable real and personal estate, and leaving a widow, Caroline M. Cunningham, but no children. By his will, dated March 5, 1886, and duly admitted to probate after his death, the testator bequeathed various legacies to collateral relatives and others, and then provided as follows:

"As to my real estate, first, I recognize a bargain made with Joseph B. McLain, in which I rented to him my homestead farm for three years, from April 1, A. D. 1886; after which time I hereby authorize my executor to sell my said farm for

the highest and best price that he may be able to procure therefor, and I hereby authorize him to make a good and sufficient deed or deeds therefor, without the intervention of the law; and I further hereby empower him (my executor) to use his best discretion in said sale, by selling as a whole or dividing it, and the proceeds thereof I direct shall be paid pro rata to my legal heirs and representatives in law; and should there be a residue of money as proceeds from notes and other evidences of indebtedness, after paying bequests herein made from my personal effects, then I direct that the same shall also be divided pro rata among my legal heirs and representatives."

The accountant was named in the will as the executor thereof. The widow of the testator was not named or referred to therein.

Upon a former account of the executor, embracing the testator's personal estate, a release of her interest in the entire estate, procured by the executor from the widow three days after the testator's death, was adjudged to be invalid, and it was ordered by the Supreme Court that the widow be permitted to participate in the distribution notwithstanding said release: Cunningham's App., 122 Pa. 464. Upon the return of the record in that case to the court below, the following order was made:

"And now, October 27, 1888, it appearing to the court that the Supreme Court, in an opinion this day filed, has determined that the widow of said decedent was entitled to receive the one half of the personal estate of her deceased husband, notwithstanding the release executed by her, it is now ordered that the executor presently pay to said widow, or her attorneys, Moorhead & Head, the one half the money shown by said report to be now in his hands, to wit, $6,754.25, less $80 cash already received by her, in all $6,674.25, she at the same time to surrender the note for $3,680 given to her in consideration of said release, and to make her formal election to take under the intestate laws, in writing, and file the same in the clerk's office."

In accordance with this order, the widow executed and placed on file a formal election not to take under the will of the testator, but to take her "share of the estate of said decedent under the intestate laws of the commonwealth of Pennsylvania."

Auditor's Report.

Before the auditor in the present case, the widow claimed that the testator's will effected a complete conversion of his real estate into personalty, and that such conversion enured to her benefit and entitled her to the one half of the proceeds of the realty, absolutely.

Upon the facts so found, the auditor stated his conclusions of law as follows:

The will of J. B. Cunningham, in directing his executor to sell and convey his real estate and dispose of the proceeds in the positive terms' used, worked an absolute conversion of it into personal estate; and, having studiously ignored his wife, excluding her from participation in his estate, and not in any way alluding to her, by name or otherwise, in his will, he died wholly intestate as to her, relegating her to the share of his estate to which she is entitled under the intestate laws of this state.

The widow could make no election under the will. She was a stranger to its provisions, except to stand, as regards her husband's estate, upon such rights as the intestate laws gave her. The testator having converted all his estate into personal property, it had that character at the time of his death, and retains it. It would have been different, if the testator had made any provision for or mention of his wife, and she had declined to avail herself of the provision as made for her; but, being repudiated, she was powerless to do other than she has done, claim that the conversion enured to her benefit, and entitles her to one half of the fund as personalty: McCrystle's Est., 4 W. N. 216.

—Referring to the formal election filed by the widow, the auditor reported as follows:

The auditor is asked to treat this as an election on the part of the widow, and as determining her right to the fund for distribution. Being entirely ignored in her husband's will, she had nothing to exercise an election about. The will left her nothing to choose from. As to her he died intestate, having first stamped the character of personalty upon his entire estate, and was bound to know its legal effect in determining the final disposition of his estate. The auditor cannot treat the paper signed by the widow, after a partial adjudication by the Supreme

Arguments.

Court of her rights, as her voluntary act, or as changing or shifting her relation to the fund.

In all the cases cited against this view of the case, and notably in the case of Hoover v. Landis, 76 Pa. 354, the widow was recognized and some provision made for her, something to choose from which she rejected, and a voluntary election by her to take a different estate or interest than that provided for her by the terms of the will.

—The auditor accordingly awarded to the widow, absolutely, the one half of the fund for distribution.

Exceptions to the auditor's conclusions of law were filed with him by Harlan G. Wilson and others, distributees under the will. One of these was as follows:

4. The auditor erred in giving to Caroline Cunningham, widow, the sum of $5,046.64, absolutely, out of the fund distributed at No. 15 February Term 1889, the same being part of the proceeds of the sale of real estate under the will; and the said Caroline Cunningham having elected not to take under the will of the testator, he died intestate as to her claim in his estate and she would only be entitled to the one half of his real estate during her natural life.[9]

The exceptions, having been overruled by the auditor, were renewed before the court, and by decree filed on February 1, 1890, without opinion, the court dismissed the exceptions and confirmed the report of the auditor. Thereupon the exceptants took this appeal, specifying, inter alia, that the court erred:

1. In confirming the auditor's report.

9. In dismissing the fourth exception.[9]

*Mr. J. M. Peoples* (with him *Mr. D. S. Atkinson*), for the appellants:

1. Under the provisions of § 11, act of April 8, 1833, P. L. 250; § 11, act of April 11, 1848, P. L. 537, and § 1, act of April 20, 1869, P. L. 77, the widow has her choice, either to take under the will or under the intestate law, but she cannot do both. If she see fit to take under the intestate law, she cannot receive any benefit under the will, and the real estate of the testator must pass to her as land and not as money. If she can participate in this distribution, the extent of her inter-

est is measured by the intestate law, just as if there had been no will at all: Hoover v. Landis, 76 Pa. 354.

2. In the case at bar, the widow has made an unequivocal election, after ample time for deliberation and with the advice of counsel. She cannot claim that when she filed it she was imposed on, or was not fully informed of her rights. It will be observed that she has not released her dower in this land, the release thereof given to the executor having been declared void in Cunningham's App., 122 Pa. 464. Such a release is necessary to divest her title: Watterson's App., 95 Pa. 312. We contend, therefore, that before she can take even the interest arising upon half of this fund, she should be required to release her dower in the land. This would be but fair to the purchaser, who bought believing that he would secure a perfect title.

3. But, it is contended by the widow that she is not bound by her election, because she was not named in the will. Under the act of April 20, 1869, it is not necessary that she should be a beneficiary under the will, to make an election to take against it binding upon her. But she is a beneficiary in this case. The will makes the testator's "legal heirs and representatives in law" his residuary legatees, and under that provision the distributees are the same persons who would be entitled to take under the intestate law, including the widow: Suplee's App., 16 W. N. 378; Clark v. Scott, 67 Pa. 446; Gibbons v. Fairlamb, 26 Pa. 217; Eby's App., 84 Pa. 241. How, then, can it be said she had no choice between the provisions of the law and the provisions of the will?

*Mr. Jas. S. Moorhead* (with him *Mr. John B. Head*), for the appellee:

1. The testimony adduced in Cunningham's App., 122 Pa. 464, shows that the testator did not intend to include his widow in the expression, "my legal heirs and representatives in law." It is competent to consider such testimony in construing the will: Postlethwaite's App., 68 Pa. 477; Domestic etc. Society's App., 30 Pa. 425. Nothing need be said, then, about the cases cited by the appellants to show that the widow was a beneficiary under the will; but it may be remarked that in none of them was the husband or wife of the testator treated

Opinion of the Court.

as the testator's heir; in all, it was the husband or wife of a legatee or devisee who was considered the heir, and that, not of the testator, but of the legatee or devisee.

2. Assuming that the widow was excluded from benefit under the will, and that the will converted the real estate into personalty, as of the time of the testator's death, the widow is entitled to receive the one half of the fund absolutely. This is not a case of election under the acts of assembly. She takes what the law gives her or nothing. The equitable doctrine of election presupposes a plurality of gifts or rights, between which a choice must be made: 2 Story's Eq., § 1075; and the statutes cited by the appellants apply only when a devise or bequest is made to the widow. Here, there was no provision in the will for her to decline. She simply found that the estate consisted of certain personal property, and modestly asked her share of it. The very question presented was decided by the Orphans' Court in McCrystle's Est., 4 W. N. 216, and if the principles of that case are indorsed, this decree must be affirmed.

3. The alleged election in the present case was filed after the adjudication of the widow's rights in this court, and in accordance with a requirement of the court below. We submit that no legal election ever could have been made, and that no actual election ever was made; but that the widow's rights are the same as in a plain and simple case of intestacy, and she shares in the property of her husband just as she found it immediately after his death, when, according to all the authorities, the conversion took effect. If any other view be correct, it certainly cannot be the one advocated by the appellants. If there was no conversion as respects the widow's rights, the executor's sale has not divested her interest, but it still remains in the land, and her dower is a charge against it in the hands of the purchaser. In no event can she be entitled to the income of one half of this fund. The just and equitable solution of this problem would be the affirmance of the court below.

OPINION, MR. JUSTICE MITCHELL:

Election, in the sense that applies to the present contention, means a choice between two courses of action, acquiescence by the widow in her husband's disposition of his property, or dis-

Opinion of the Court.

regard of it and assertion of the rights the law gives her. There is no third or mixed course. Her legal rights, which are paramount to the husband's control, attach eo instanti that he dies, and there is no interval during which the will can slip in and work a conversion, and then stand aside to let in her intestate rights upon the converted estate. Conversion takes place by virtue of the will, but as to the widow so electing there is no will. She must make her choice, and it is will or no will. She has time to consider which she shall take, but the quality of the estate as to her rights is fixed at the moment of death, and she must take one or the other as they were then. The law does not permit her to say there is a will for conversion, and no will as to her share.

This was decided in Hoover v. Landis, 76 Pa. 354, but the learned auditor in the present case drew a distinction based on the fact that in Hoover's will provision was made for his wife, while in Cunningham's she was not named; but such a distinction is altogether untenable. Followed to its logical conclusion, it would result that a will which gave the widow one cent would require and support a valid election, while one which gave her nothing would not permit an election at all. The law does not sanction such an illusory distinction, and the argument which would support it is founded on wrong premises. The election which the widow is required to make is between rights, not between benefits. She has the right to abide by her husband's disposition of his property, or the right to override it and claim under the intestate law. These rights are inconsistent, and cannot co-exist. She has always the choice which she will assert, but the choice is of one or the other, not both, and does not legally depend in any degree on the mention or omission of her in the will, or on the quantum of benefits she receives or renounces under it.

Neither the act of April 8, 1833, § 11, P. L. 249, nor the act of April 11, 1848, § 11, P. L. 537, affects this question. The common-law rule was that a devise or bequest to a wife was not in satisfaction or lieu of dower unless so expressed in the will: Co. Litt. 36 b. The courts of equity relaxed this rule by holding that where the provisions of the will would otherwise be materially disarranged, an intention to make the devise in lieu of dower would be implied. This gave rise to frequent

litigation as to the inconsistency of dower with the provisions of wills, (see Webb v. Evans, 1 Binn. 565,) and the act of 1833, § 11, was meant to diminish this by establishing a fixed general rule.   The act of 1848, supra, simply secures the widow her choice between the provision for her in the will, and her share under the intestate law of both personalty and realty.

As the widow's rights are paramount to her husband's power of disposition, she of course at her election could claim her statutory estate in the land itself, and in law it is this only to which she is entitled.   But in equity, as she has acquiesced in the sale and made claim to the proceeds, she must now be held to have relinquished her dower, and the land to have passed to the purchaser discharged of her estate in it.   It is an estoppel by election.   But the fund is to be treated as still realty, for the purpose of determining the quantum of her interest or estate in it, and that is for life only.   One half of the fund, therefore, must be properly secured under the direction of the court, and the interest paid to her during her life.

Whether her filing of the formal paper, electing to take against the will, was voluntary or under the stress of an order from the court, is entirely immaterial.   Such a writing is proper for convenience and certainty of evidence, but is not otherwise important: Light v. Light, 21 Pa. 407; Bradfords v. Kents, 43 Pa. 474; Kennedy v. Johnston, 65 Pa. 451.

> Decree reversed, and record remitted for distribution of the fund in accordance with this opinion.

