## Powell's Estate.

*Decedents' estates—Husband and wife—Widow's election—Conditional election.*

1. While the privilege or right of election of a widow between a provision made for her in her husband's will, and her statutory interest in his estate is conferred upon the widow, she is limited to a choice between the two provisions; she cannot accept a part of the devise or bequest in her favor and demand a part of the statutory provision made in her behalf; nor can she accept the provisions of the will on any condition which would change its terms. Thus she cannot elect to accept the provisions of the will on condition that she shall receive a portion of the testator's estate different from that devised or bequeathed her in the will. She has but one choice between the two alternatives; neither does her right of election depend upon the quantum of the estate which she may receive under the will or under the statute, and it is not affected by the interest which the other beneficiaries of the estate may receive.

2. Where a testator by his will divides his estate into six equal parts and gives one part to his second wife, and divides the other five parts among his five children by his first wife, and thereafter two children are born to him by his second wife, but he dies without changing his will, an election by the widow to take an eighth part on condition that the estate shall be divided into eight parts of which her own children shall each receive an eighth, is an invalid election, and may be subsequently disregarded by her. If, in such a case, the invalid election is addressed in writing to the executor and signed by the widow alone, and not by any of the other parties in interest, the writing will not be construed as a family agreement, and the widow may elect to take her statutory interest in the estate against the will, as if no such paper were in existence.

Argued Feb. 1, 1909. Appeal, No. 325, Jan. T., 1908, by William S. Powell, from order of O. C. Lehigh Co., June T., 1902, No. 14, dismissing exceptions to auditor's report in Estate of John M. Powell, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of Samuel A. Butz, Esq., auditor.

From the record it appeared that John M. Powell died on

April 19, 1901, leaving to survive him a widow, Elizabeth A. Powell, and seven children, five of whom were by a former wife, and two, Helen and Ruth, by the second marriage. On July 24, 1901, a will was probated, the date of which was April 5, 1895, which was before the birth of Helen and Ruth. By this will testator divided his entire estate into six equal shares, giving one share to his wife and the remaining five to each of his five children. Testator died without making any change in his will. On July 24, 1901, the widow delivered to the executor the following paper:

"ALLENTOWN, PA., July 24, 1901.

"I, Elizabeth Ann Powell, widow of John M. Powell, deceased, do hereby signify my desire and intention to accept under the provisions of the will of John M. Powell as probated July 24, 1901. It being understood that all the children, including Helen and Ruth are to share equally with me in the estate, each to receive one-eighth of the estate being convinced that this was the desire of my husband, I hereby now accept the provisions of the will instead of my share under the intestate laws of Penna. subject to the including of Helen and Ruth, my daughters, and understanding that the estate is to be divided into eight shares instead of six shares.

"[Signed]    ELIZABETH A. POWELL.
"[Signed]    O. R. B. LEIDY,
         "A. G. DEWALT."

On October 23, 1901, the widow addressed to the executor the following paper:

"THOMAS M. POWELL, ESQ., Executor of the last will and testament of John M. Powell, deceased.
"Sir:
"Take notice that I, Elizabeth A. Powell, widow of John M. Powell, late of the City of Allentown, Pennsylvania, deceased, decline to take under the will of my deceased husband, notwithstanding the paper signed by me on July 24, 1901, electing to take under the same. At the time of signing said paper

I was wholly ignorant of my rights under the law, and I was in no way conscious of my legal rights and the rights of my two children.

"[Signed]    ELIZABETH ANN POWELL.

"Witnesses present:

"EDWARD HARVEY,

"CALVIN E. ARNER.

"Allentown, Pa., Oct. 23, 1901."

The auditor found that the widow was bound by the paper. dated October 23, 1901, and therefore reported in favor of dividing the estate into eight equal shares, and distributing it between the seven children and the widow.

Exceptions to the auditor's report were sustained in an opinion by TREXLER, P. J., and the account was referred back to the auditor. In a supplemental report the auditor allowed the widow one-third of the estate, and distributed the remainder amongst the seven children, share and share alike.

*Errors assigned* were in dismissing exceptions to the auditor's supplemental report.

*Arthur G. Dewalt*, for appellant.—The learned court ignored the fact that the act of assembly read into the will the names of both Ruth and Helen, after-born children, and that the law made the will not only one which included the five children then born, but the two after-born children. Mrs. Powell was fully informed of that fact, if this testimony can be believed, and therefore she was, in matter of law and in matter of fact, receiving just what the will gave her, if she signed the paper, namely, one-eighth. She was not adopting a dual course, or a mixed course, as suggested by the court below: Cunningham's Est., 137 Pa. 621; Light v. Light, 21 Pa. 407.

It must be remembered that in this case there was not an implied election, but as we contend, an express election, evidenced by a writing under the hand of the widow. There is a

difference, we think, in the power of retraction, where the election is explicit and express, provided it is fairly and properly made, and where the election is to be inferred from acts done. In the latter case every act depended upon must show a clear intention to elect; so clearly that it is inconsistent with any other honest intent: Butricke v. Broadhurst, 1 Ves. Jr. 171; Anderson's App., 36 Pa. 476.

*Edward Harvey*, for appellee.—The paper of July 24, 1901, is not an election to take under the will, either in form or substance; and it is not an election in law or fact: Bliss v. Geer, 7 Ill. App. 612; Almy v. Harris, 5 Johns. 175; Norwood v. Lassiter, 132 N. C. 52 (43 S. E. Repr. 509); Priest v. Foster, 69 Vt. 417 (38 Atl. Repr. 78); Cunningham's Est., 137 Pa. 621; Newman v. Newman, 1 Bro. C. C. 186; Chalmers v. Storil, 2 Ves. & B. 222; Kidney v. Coussmaker, 12 Ves. Jr. 136; Woodburn's Est., 138 Pa. 606; Miller's Est., 159 Pa. 562; Bierer's App., 92 Pa. 265; Elbert v. O'Neil, 102 Pa. 302; Bradfords v. Kents, 43 Pa. 474; Anderson's App., 36 Pa. 476; Cox v. Rogers, 77 Pa. 160; Kreiser's App., 69 Pa. 194.

A widow having given notice of her intention to take against the will, it is still within the discretion of the auditing judge up to the time of adjudication to permit her to withdraw her election: Barry's Est., 13 Phila. 310; Maffet's Est., 6 Kulp, 452; Toomey's Est., 2 W. N. C. 682; White's Est., 23 Pa. Superior Ct. 552.

OPINION BY MR. JUSTICE MESTREZAT, October 11, 1909:

The facts material to our disposition of the case may be briefly stated. John M. Powell died April 19, 1901, testate, leaving a widow, five children by his first wife, and two children by the last wife. In his will, probated July 24, 1901, he disposes of his residuary estate as follows: "On my death it is my will expressly declared that all of my estate then remaining be divided into six equal shares or parts, and I hereby give devise and bequeath to my beloved wife Elizabeth A. Powell one of those equal shares or parts being one-sixth of my estate." The other five-sixths of his residuary estate he

divides equally among his five children by his first wife. At the date of the will, April 5, 1895, Helen and Ruth, the two children by his last wife, had not been born and no provision was made for them therein.

The decedent was at first supposed to have died intestate, and letters of administration on his estate were granted to his brother. About three months after his death, the will was discovered and probated. On the day of the probate, the widow executed the following paper: "I, Elizabeth Ann Powell, widow of John M. Powell, deceased, do hereby signify my desire and intention to accept under the provisions of the will of John M. Powell as probated July 24, 1901. It being understood that all the children, including Helen and Ruth, are to share equally with me in the estate each to receive one-eighth of the estate being convinced that this was the desire of my husband, I hereby now accept the provisions of the will instead of my share under the intestate laws of Penna. subject to the including of Helen and Ruth, my daughters, and understanding that the estate is to be divided into eight shares instead of six shares." Notwithstanding this paper, the widow on October 23, 1901, gave the executor notice that she declined to take under the will. The auditor appointed to distribute the estate found that the widow "signed the paper with a full understanding of all her legal rights as the widow of John M. Powell, and that she was fully informed as to the nature, kind and amount of the estate, real and personal, of John M. Powell, deceased." The auditor held that the widow was, therefore, bound by her election and awarded her one-eighth of the fund for distribution. The orphans' court reversed the auditor, holding that the widow was not bound by the election made by the paper of July 24, 1901, because it was made under a misapprehension of her rights.

We are satisfied, after an examination of the testimony, that the learned counsel for the estate advised the widow fully as to her rights and the amount of her deceased husband's estate prior to her signing the paper of July 24, 1901. We do not, however, regard the fact whether she was so advised or

not as material to the disposition of this appeal. In our judgment, the paper in question is not an election to take under or against the will as contemplated by the statute, and hence does not prevent her from asserting her statutory rights in her deceased husband's estate.

A married woman has an interest in the estate, real and personal, of her husband of which she cannot be deprived except by her own act. While he may dispose of his property by will, his wife's interest therein cannot be defeated by such testamentary disposition. On the death of the husband, intestate, the statute gives a specific portion of his estate, after the payment of debts, to his widow. If he die testate, his widow may accept the provisions made for her in his will or she may renounce them and elect to take her statutory share or portion of his estate. Her right of election is personal and can be exercised only by herself. If she fail to make an election within twelve months after her husband's death, she may be cited by the court to do so. While the privilege or right of election between a testamentary provision and her statutory interest in her deceased husband's estate is conferred upon the widow, she is limited to a choice between the two provisions. She may acquiesce in or consent to the provision made by her husband for her and receive such provision in lieu of her statutory interest in the estate; or she may renounce the testamentary disposition and assert her right to the interest in the estate given her by the law. There is no other or middle course for her to pursue. She cannot accept a part of the devise or bequest in her favor and demand a part of the statutory provision made in her behalf. She cannot accept the provisions of the will on any condition which would change its terms. She cannot elect to accept the provisions of the will on condition that she shall receive a portion of the testator's estate different from that devised or bequeathed her in the will. She has but one choice between the two alternatives: the provisions of the will or her statutory interest in the estate. Neither does her right of election depend upon the quantum of the estate which she may receive under the will or under the statute, and it is not

affected by the interests which the other beneficiaries of the
estate may receive.  As said in Cunningham's Est., 137 Pa.
621, 628: "She must make' her choice, and it is will or no
will. . . . The election which the widow is required to make
is between rights, not between benefits.  She has the right
to abide by her husband's disposition of his property, or the
right to override it and claim under the intestate law.  These
rights are inconsistent, and cannot coexist.  She has always
the choice which she will assert, but the choice is of one or
the other, not both, and does not legally depend in any degree
on the mention or omission of her in the will, or on the quan-
tum of benefits she receives or renounces under it."

In the present case, it is conceded that there was no im-
plied election, but it is contended that the paper of July 24,
1901, signed by the widow, was an express election to take
under her husband's will.  If, therefore, this paper is not
effective as an election to take under the will, the widow is
entitled under her election of October, 1901, to her stat-
utory interest in her husband's estate.  As to Helen and
Ruth, the children born after the date of the will, the testator
died intestate: Grosvenor v. Fogg, 81 Pa. 400; Wilson v.
Ott, 160 Pa. 433; and they are "entitled to such purparts,
shares and dividends of the estate, real and personal, of the
deceased, as if he (the testator) had actually died without
any will:" Act of April 8, 1833, sec. 15, P. L. 249.  So far,
therefore, as those two children and their interests in the
estate are concerned, the testator died intestate and they are
each entitled to the one-seventh of his personal property
absolutely and to the one-seventh of his realty, subject to
the widow's dower.  The failure to provide for the preter-
mitted children revokes the will pro tanto.  They do not take
by virtue of its provisions, and their statutory interest in the
estate is not affected by it.

Turning now to the testator's will it will be observed that
he made no provision for his after-born children, but divided
his residuary estate into six equal parts, giving one of those
parts to his widow and the other five parts to the five children
by his first wife.  Owing to the fact that the residuary estate

will be diminished to the extent of the interest of the after-born children therein, it is apparent that the widow cannot receive the one-sixth of the whole estate given her in the will. As suggested above, each of those two children take one-seventh of the personalty and one-seventh of the realty, subject to the widow's dower. The residuary estate, therefore, is diminished to that extent; and the amount received by the widow will necessarily be less than that given her by the will. If, therefore, she had accepted unconditionally the provisions of the will in lieu of her statutory interest in her husband's estate, she could not receive absolutely the one-sixth of her husband's entire estate given her by the will.

But aside from other considerations, the paper of July 24, 1901, is not an election to take under the testator's will. This is apparent on the face of the paper itself. Referring to its contents it will be observed that in the first part the widow signifies her "desire and intention to accept under the provisions of the will." This is not an absolute, positive election, but a simple declaration of a desire and an intention to accept the testamentary provisions made for her. The next sentence in the paper discloses a conditional acceptance, viz.: that if her two daughters are permitted to share equally with her and the other children in the estate she will accept the provisions of the will. That is, if her daughters, Helen and Ruth, each receive one-eighth of the estate, she will likewise accept one-eighth of the estate "instead of my share under the intestate laws of Penna." The last clause of the paper makes her acceptance of the provisions of the will distinctly "subject to the including of Helen and Ruth, my daughters, and understanding that the estate is to be divided into eight shares instead of six shares." The effect of the paper, therefore, is that the widow will accept one-eighth of the residue of her husband's estate, provided her two daughters, Helen and Ruth, each receives a like share. This is a condition which cannot be attached to a valid acceptance. Beyond that, and absolutely destructive of the acceptance, is, as shown by the paper itself, that she does not accept the one-sixth of the residue of the testator's estate which is given her

by the will, but the one-eighth of the estate which is not given her by the will. Whether she receives more or less by accepting the one-eighth instead of one-sixth share of the estate is wholly immaterial so far as the validity of her acceptance of the provisions of the will is concerned. The statute does not give her the right to change the distribution made by the testator nor to make a new or other will for him. It confers upon her simply the right to say "yea" or "nay," when called upon to elect whether she will accept the provisions of the will or her statutory interest in the decedent's estate. In the paper of July 24, 1901, she has not exercised her election as permitted by the statute, but attempts to distribute the estate in equal shares between herself and the seven children of her husband, thereby giving each the undivided one-eighth part of the estate, instead of accepting the provisions of the will which gives her the one-sixth part of the estate. That this cannot be done is clear on reason, and is distinctly ruled in Cunningham's Est., 137 Pa. 621.

The paper signed by the widow is not a family arrangement, nor an agreement of any kind between the widow and other parties, as no other party is named in it or consents to it by attaching his signature. It cannot be considered a family agreement in any aspect of the case, but must be accepted simply as an abortive attempt on the part of the widow to accept the testamentary disposition made for her in her husband's will. Unless we hold that a widow may, by her acceptance, make a distribution of her husband's estate contrary to and different from that made in his will, we must declare the paper of July 24, 1901, inoperative and ineffective as an acceptance by his widow of the provisions of John M. Powell's will. If the paper had been intended as a family agreement, it should have so declared, and should have been signed by all the interested parties. The widow then, like the other beneficiaries, would have been bound by its terms, and the estate would be distributed in accordance therewith.

From what has been said it follows that the attempted acceptance by the widow in the paper of July 24, 1901, is in-

operative, and that her election on October 23, 1901, entitled her to her statutory interest in her husband's estate.

The decree of the court below is affirmed.

Mr. Justice Stewart, concurring:

I concur in this affirmance; but I would rest the decision on the broader, and, as I think, the more certain ground, that where a widow makes a voluntary election to take under or against her husband's will, the way is open to her to retract so long as nothing has been done under her election to alter the condition of the estate. She is concluded by her election made in court after twelve months from her husband's death, because the act of assembly expressly so declares; but the case is totally different where the election is voluntary. We have no act of assembly providing for or even recognizing a voluntary election; nevertheless, it is entirely competent for a widow, in order to expedite a settlement of the estate, to make her election in advance of the period fixed by the statute when she may be required to do so. When she makes such an election, however attested, it is simply a declaration of a purpose which she is entirely free to retract, except as it has induced action upon the part of others which would make it inequitable to allow her to choose differently. I know of no legal ground on which a denial of such right can rest, except as the election is shown to establish some contract relation. This may be the case where the election enters into and is part of a family settlement; but where, as here, it is a matter simply between the widow and the executor of the will, intended to serve no other purpose than to guide the executor in the settlement and distribution of the estate, it has not the first element of contract until acted upon. Cases abound where the widow has been held to an election voluntarily made, but always on equitable considerations. If nothing has been done under her election, no part of the estate converted or distributed, and no one prejudiced, there can be no ground for equitable interference by way of restraint. In this case the retraction came within a few months after the election had been made. During the in-

terval not a single step had been taken in the settlement of the estate, and it is not pretended that the situation had changed with respect to the estate or the situation of the parties interested therein. I would rest the decision on the sufficiency both in law and equity of the widow's retraction.