# Kates's Estate.

*Wills—Power of appointment—Construction — Statutes — Act June 7, 1917, P. L. 403.*

1. Where a donor gives to his donee a life estate, with a general power of appointment in remainder, the property must be distributed as specified in the paper by which the power is exercised, and not otherwise; to permit any other disposition of it would be an invasion of the donor's private dominion over his own property.

2. Section 23 (a) of the Wills Act of June 7, 1917, P. L. 403, 410, which provides that a surviving spouse, who elects to take against the will of his or her deceased spouse, shall be entitled to such interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate, does not give to the one so electing a right to any part of an estate over which the deceased spouse had a general power of appointment.

*Statutes—Construction—Doubtful statute — Old law, mischief, remedy and reason—Common law—Legislative construction.*

3. The true way to arrive at a sound construction of a doubtful statute is to consider the old law, the mischief, the remedy and the true reason of the remedy, and to so interpret the statute as to accord, as nearly as may be, with the common law and to the course it observed in cases of its own, before the act.

4. Where a court of last resort has construed language appearing in a statute, it will be presumed that the legislature, when using the same language in a cognate statute, intended that the same construction should be placed upon it.

*Taxation—Inheritance tax—Wills — Maxim — General expressions in opinion.*

5. McCord's Estate, 276 Pa. 459, and Forney's Estate, 280 Pa. 282, simply decide that, under the Inheritance Tax Act of June 20, 1919, P. L. 521, the Commonwealth is entitled to inheritance taxes upon appointed estates, at the rate existing at the time the appointment goes into effect.

6. It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but will not control the judgment in a subsequent suit, when the very point is presented for decision.

*Wills—Power of appointment—Blended estates.*

7. Where one having a general power of appointment directs that the appointed estate be blended with his own for the purpose of distribution to the creditors and distributees named in his will, the court having jurisdiction over the donor's estate should award it to the executor of the donee's will, in order that distribution, from the blended estates, may be made properly to such creditors and distributees.

Argued January 13, 1925. Appeal, No. 204, Jan. T., 1925, by Amelia Cherix Harrison, from decree of O. C. Chester Co., entered Oct. 28, 1924, dismissing exceptions to auditor's report, in estate of Clarence Sears Kates, deceased. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Exceptions by widow to report of Isabel Darlington, auditor. Before HAUSE, J.

The opinion of the Supreme Court states the facts.

Exceptions sustained. Amelia Cherix Harrison appealed.

*Error assigned* was, inter alia, decree, quoting it.

*J. Paul MacElree,* for appellant.—The courts of Pennsylvania have maintained more rigorously the line of distinction between property and power than the courts of England: Com. v. Duffield, 12 Pa. 277; Stokes's Est., 20 W. N. C. 48.

A widow has no common law right of dower out of an appointed estate.

No estate arising under the power was in Clarence Sears Kates until the will operated; and the will cannot begin to operate until the widow's taking against it is completed and disposed of: Holdship v. Patterson, 7 Watts 547; McCord's Est., 276 Pa. 459; Huddy's Est., 236 Pa. 276.

Where an estate is expressly given for life, an added power of disposal given to the life tenant does not en-

large the estate into an estate in fee: Flintham's App., 11 S. & R. 16; Com. v. Duffield, 12 Pa. 277; Girard Life Ins. & Trust Co. v. Chambers, 46 Pa. 485.

The widow's rights are fixed by statute.

As to Mary A. Kates (the surviving spouse) there was no will and no merger: Haddock's Est., 18 W. N. C. 243; Powell's Est., 225 Pa. 518; Petterson's Est., 195 Pa. 78; Cunningham's Est., 137 Pa. 621; Murray's Est., 28 Pa. Superior Ct. 474; Levengood's Est., 38 Pa. Superior Ct. 491; Dermond's Est., 55 Pa. Superior Ct. 453.

*A. M. Holding*, of *Holding & Harvey*, with him *Maurice Worrell Sloan*, for appellee.—This testator had a small estate immediately before his death. By making his own estate the beneficiary of the estate of his father over which he had the power of appointment, and blending it with his own, he made it his own "for all purposes" at the instant of his death, and his widow, the appellee, therefore, by her subsequent election to take against his will, became entitled to share therein: Huddy Est., 236 Pa. 276; McCord's Est., 276 Pa. 459; Howell's Est., 4 Pa. D. & C. 526; Forney's Est., 280 Pa. 282.

OPINION BY MR. JUSTICE SIMPSON, February 9, 1925:

The present testator had an estate of his own, and also a general power of appointment over a portion of the estate left by his father. His widow and two children survived him; the widow elected to take against his will, and claimed to receive one-third of both estates; the auditor decided she was only entitled to one-third of such property as the testator personally owned; the orphans' court held otherwise and this appeal followed.

The father's will provided that his residuary estate should be held in trust, the income to be divided equally between the present testator and his sister during their respective lives, and "upon the deceased of either of my said children then in trust as to one equal half part [of

the principal] to and for the use and benefit of such person or persons and for such estate and estates, use and uses as my said deceased child by his or her last will executed according to law may direct, limit and appoint: And in default of such direction, limitation or appointment then in trust as to said one-half part of the principal of my said estate for the use and benefit" of the descendants of the life tenant so dying, if any, and, if not, then for the benefit of the other life tenant and his or her descendants.

The present testator's will provided: "I make this will to dispose of as well my own property as the property over which I have a power of appointment under the will of my father, Horace N. Kates, deceased, or of any other person." He then directed payment of his debts and funeral expenses and divided the balance of the blended estates between his wife and certain other specified legatees. If the decree of the court below is sustained, the widow will receive much more from the estate of the father than her husband directed she should have, under the power of appointment vested in him. The effect of this is to defeat pro tanto the will of the father, despite our decision in Com. v. Duffield, 12 Pa. 277,—consistently followed ever since,—that this cannot be permitted. The appointed estate was the father's; his dominion over it was supreme; any attempt "to appropriate [such] a gift to a purpose or person not intended, would be an evasion of the donor's private dominion" (Holdship v. Patterson, 7 Watts 547, 551; Morgan's Est. (No. 1), 223 Pa. 228, 230), and hence must necessarily fail. Of course, the legislature could, as to future estates, direct otherwise, because the right to take after death is a right depending upon legislation: Kirkpatrick's Est., 275 Pa. 271; Frick's Est., 277 Pa. 242. In this State, however, we have no such legislation.

The applicable statute is section 23 (a) of the Wills Act of June 7, 1917, P. L. 403, 410, which provides as

follows: "When any person shall die testate, leaving a surviving spouse who shall elect to take against the will, such surviving spouse shall be entitled to such interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate." In an attempt to make this section comport with her wishes, appellee argues that "the words 'as he or she would have been entitled to had the testator died intestate,' do not qualify the words 'the real or personal estate,' but the word 'interests.'" Hence she concludes that "these words refer to and define the quantity of interest of the surviving spouse and have no relation to the testator's estate." We might concede the first part of this, without advancing a step in appellee's direction; for the question would at once arise, what "interests" are meant by the statute? The only possible answer is "interests in the real and personal estate of the deceased spouse," for otherwise there is nothing to which "interests" can apply. It follows that the stipulation "as he or she would have been entitled to had the testator died intestate," qualifies the entire preceding clause, and not merely a part of it, and this accords with our conclusion when construing earlier cognate statutes containing similar provisions.

In Hoover v. Landis, 76 Pa. 354, 356, the court below said: "Her election destroys the will as to her, and she must take just what the law would give her had her late husband died intestate. There is no will, while she receives her share." We affirmed, saying: "This case is so well stated in the opinion of the court below, it is unnecessary to discuss it." In Cunningham's Est., 137 Pa. 621, 628, we said: "She must make her choice, and it is will or no will......She has the right to abide by her husband's disposition of his property, or the right to override it and claim under the intestate law. These rights are inconsistent and cannot coexist. She has always the choice which she will assert, but the choice is of one or the other, not both, and does not legally

depend in any degree on the mention or omission of her in the will, or on the quantum of benefits she receives or renounces under it." The same conclusion is stated in Powell's Est., 225 Pa. 518, 523; Murray's Est., 28 Pa. Superior Ct. 474, 476; Levengood's Est., 38 Pa. Superior Ct. 491, 500; and Dermond's Est., 55 Pa. Superior Ct. 453, 454. Notwithstanding the foregoing authorities, appellee argues that her husband is to be considered as testate for the purpose of blending his own estate with the one over which he had a power of appointment, but intestate for the purpose of enabling her to obtain one-third of both estates. Of course this contention cannot prevail.

Neither in the report of the commissioners who drafted the Wills Act, nor in the statute itself, is there found the slightest evidence of an intention to change our long settled public policy on this question, except in so far as it was necessary so to do, in order to put surviving husbands and wives on exactly the same plane. This is no slight consideration in itself; for if we assume that a doubt exists as to the meaning of the act (although we do not find one), the rule applies that "The true way to arrive at a sound construction of a doubtful statute, is to consider the old law, the mischief, the remedy, and the true reason of the remedy; and ......the safest way is to interpret statutes as near as may be to the common law, and by the course it observed in cases of its own, before the act": Com. v. Burrell, 7 Pa. 34.

There is a still stronger argument against appellee's contention in the instant case. By section 1 of the Act of May 4, 1855, P. L. 430, it is provided that "any surviving husband may, against her [his wife's] will, elect to take such share and interest in her real and personal estate as she can, when surviving, elect to take against his will in his estates, or otherwise to take only her real estate as tenant by the curtesy." The words "such share and interest in her real and personal estate," so far as

they there affect a husband, are precisely the same as "such interests in the real and personal estate of the deceased spouse," in the section of the Wills Act now under consideration. What was meant by the above-quoted language of the former statute, was decided in Huddy's Est., 236 Pa. 276, 282, where we said: "The Act of May 4, 1855, P. L. 430, section 1, provides that a surviving husband may elect to take against his deceased wife's will 'such share and interest in her real and personal estate as she can, when surviving, elect to take against his will in his estate.' Such an election, affects the distribution of the 'real and personal estate' of the deceased wife, the husband taking his share of her property as though there was no will; but it in nowise affects the distribution of property thereby directly or indirectly disposed of in the exercise of a power of appointment, for such property is not and never was the 'real and personal estate' of the wife." True, in that case there was no blending of testatrix' own estate with the estate over which she had a power of appointment, but, in determining the meaning of the above language in the Act of 1855, as we were doing in that quotation, this is a matter of no moment. In Shoch's Est. (No. 1), 271 Pa. 158, 164, we reasserted the conclusion quoted. There also testator died before, but the rule stated was reannounced after the passage of the Act of 1917. With this meaning given to the words in the Act of 1855, the Act of 1917 was passed, and hence it must be presumed that the legislature intended the construction given by this court, in the case first cited, to apply to the same language in the Act of 1917: Hedrick v. Harrisburg, 278 Pa. 274; Bingaman's Est., 281 Pa. 497.

As a last resort, appellee, though admitting (as does also the court below) that the question under consideration has never been decided by us, contends, in effect, that it was ruled in her favor in McCord's Est., 276 Pa. 459, and Forney's Est., 280 Pa. 282. Happily no such

illogical conclusion was reached in either case. In neither of them was the Act of 1917 under consideration, nor were the prior statutes relating to a widow's election; they both raised the question as to whether or not an inheritance tax was collectible, and, if so, at what rate. To determine this, the only statute construed was the Inheritance Tax Act of June 20, 1919, P. L. 521 (which was in effect when the powers of appointment were exercised in these two estates), and it charged the tax upon property "when the transfer is by will or by the intestate laws of this Commonwealth from any person dying seized or possessed of the property." A construction of this statute is, of course, of no value in determining the question now before us; and hence it is of no consequence that, in each of those estates, the donee, in exercising a similar general power of appointment, did so in substantially the same way as in the instant case.

What we said in McCord's Estate, which does have a bearing on the present issue, is that by the blending of the two estates, they became "as one estate, from which debts and legacies were payable." This rule did not disturb the order of distribution specified in the will of the donee. On the contrary, it required his order of distribution to be carried out in every respect. In the instant case, however, appellee seeks to change it entirely, so far as concerns the one-third she desires to have as against those to whom it was appointed. True, we also said in that case that the "power of appointment by will being unlimited, she [Miss McCord] could transfer the trust fund to her own estate and did so in unmistakable language, making it a part thereof for all purposes"; that is, for all purposes of distribution under her will, not for purposes of distribution in antagonism thereto. If so much stress had not been laid by the court below on the words "for all purposes," it probably would not have fallen into the error it did. "It is a maxim not to be disregarded, that general expressions, in every opinion, are

to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." Thus wisely spoke the Supreme Court of the United States, in an opinion by Chief Justice MAR-SHALL, in Cohens v. Virginia, 6 Wheaton 264, 399; and twice recently, in referring to that case, we have followed and approved this conclusion: O'Malley v. O'Malley, 272 Pa. 528, 536; Levin v. Fourth Street National Bank, 277 Pa. 350, 355.

It is a matter of no moment here that, in the adjudication of the account of the trustees under the father's will, the Orphans' Court of Philadelphia County awarded the net balance of one-half of the trust estate to the donee's executors. The present testator's estate was not sufficient to pay his debts and the legacies given by his will, and hence the course pursued was necessary in order that the two funds might be before the Orphans' Court of Chester County, which alone had the right to determine who were the creditors and distributees of the donee's estate, and the order of their payment out of the blended estates: Stokes's Est., 20 W. N. C. 48, by PEN-ROSE, J.

The decree of the court below is reversed and the record is remitted that distribution may be made in accordance with the views expressed in this opinion.