## Blackburne's Estate.

*Wills — Construction — Power of appointment — Execution of — Act of June 7, 1917.*

Under a gift to the widow of the testator of such share of his estate as she would be entitled to under the intestate laws, followed by a gift of all the rest, residue and remainder to his two sisters, the estate over which he had a general power of appointment passes under section 11 of the Act of June 7, 1917, P. L. 403, so that the widow, on his death, becomes entitled to her interest under the intestate laws in both his individual estate and the fund over which he had such power of appointment.

Exceptions to adjudication. O. C. Phila. Co., April T., 1912, No. 106.

The facts appear from the following extract from the adjudication of LAMORELLE, P. J., Auditing Judge—

Sarah S. Blackburne died Feb. 4, 1911. By will, dated Aug. 31, 1899, she bequeathed and devised all of her estate to her three children, Hannah S., John A. and Emily L. Blackburne, in equal shares. By codicil, dated Dec. 7, 1904, she revoked the devise and bequest in favor of her son, John S. Blackburne, and in lieu thereof gave this share to her two daughters, by name, *in trust* to pay the net income thereof to the son for life, without liability for his debts, and upon his death to hold the share for such person and for such estates as the son should by will limit and appoint, and for want of appointment, then to and for said daughters individually.

John S. Blackburne, the son and donee of the power, made his will Feb. 26, 1904. It was, therefore, executed at a time when, under his mother's will, he was entitled to one-third of her. estate absolutely. Whether in his mother's lifetime he had knowledge of the provisions of her will or of the change made by the codicil is not shown. In any event, he made no change in his own will after the date of the codicil to his mother's will—Dec. 7, 1904.

John S. Blackburne died Nov. 18, 1925. The trustees under his mother's will then filed this account of the trust estate.

John S. Blackburne was survived by his wife, Ida P. C. Blackburne, and by two children, John and Agnes.

After directing the payment of his just debts and funeral expenses, he made this disposition: "Item. I give and bequeath to my wife Ida P. C. Blackburne such share of my Estate as she is entitled to under the Intestate Laws of the State of Pennsylvania And all the rest residue and remainder of my Estate Real, Personal and mixed of whatever kind and wheresoever Situate of which I may die seized and possessed I give, devise and bequeath to my two Sisters Hannah S. Blackburne and Emly L. Blackburne share and share alike their Heirs, Executors, Administrators and Assigns forever."

His widow, Ida P. C. Blackburne, claims one-third of the fund. I am of opinion that she is entitled thereto.

There is no exercise of the power of appointment in terms. It is, therefore, legally exercised under section 11 of the Wills Act of June 7, 1917, P. L. 403. Under his will, therefore, not only does his own property pass, but also that as to which he has the right of appointment. This is true, notwithstanding the fact that the codicil creating the power was executed about nine months after the date of John S. Blackburne's will (see Fidelity Co.'s Appeal, 108 Pa. 492), and that section 11 of the Wills Act of 1917 applies is conceded by all counsel.

Section 11 of the Wills Act provides that "A general devise of the real estate of the testator . . . shall be construed to include any real estate . . .

which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will. In like manner, a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate . . . which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will."

It is to be noted that the bequest to the wife is as general as that to the sisters, and what is said by the present Chief Justice in Thompson v. Wanamaker's Trustee, 268 Pa. 203, 214, with reference to the statute, would appear to be particularly in point. "The statute proceeds on the assumption, previously referred to, that an ordinary man considers property, which he may dispose of by will, as his own: Mortimer v. Mortimer, 1 Ch., 1907, 445, 449; Aubert's Appeal, 109 Pa. 447, 452; and, shifting the burden of proof theretofore prevailing in such cases, the rule is ordained that he who, in any instances, denies that a general devise executes a general power of appointment must prove 'by what appears on the face of the will' that it was testator's 'clearly expressed' intention the devise in question 'should not do so:' 1 Jarman on Wills (5th ed.), 813; Fidelity, etc., Co.'s Appeal, 108 Pa. 492, 503; Huddy's Estate, 236 Pa. 276, 282; Pennsylvania Co.'s Account, 264 Pa. 433, 436."

Testator uses the words "my estate" not only in connection with the gift to the widow, but also in connection with the gift to the sisters. Each bequest is as general as language can make it. The same reason which applies to the passing of one part of the estate applies to the passing of the other; each is of property described in a general manner; each comes within the wording of the act. There is no evidence in the will of any contrary intent.

Howell's Estate, 185 Pa. 350, while not on all fours with the instant case, is helpful. In that case the donee of a general power by will devised and bequeathed all his estate, both real and personal, according to the intestate laws of the State of Pennsylvania. There was no reference to the power in the will. It was argued that the donee, having given his property according to the intestate laws, excluded the property over which he had simply a power to appoint, because these laws affected only the property which was actually owned by the decedent himself. The Orphans' Court of Philadelphia County, in an opinion by Ashman, J., held that the widow was entitled to the share specified by the intestate law in the appointed property, and on appeal to the Supreme Court, the decree of the court below was affirmed in a *per curiam* opinion.

Counsel for the sisters argues in effect that the use of the words "such share of my estate as she is entitled to under the Intestate Laws of the State of Pennsylvania" limits the widow's rights to such share as she would be entitled to if she elected to take against his will, and that it follows that she may not participate in the donor's estate at all. He cites two cases, Huddy's Estate, 236 Pa. 276, and Kates's Estate, 282 Pa. 417, to show that if the surviving spouse elects to take against the will, he or she is not entitled to any share of the appointed property.

Huddy's Estate does not so decide. On the contrary, as I read it, it favors the opposite view. In Huddy's Estate, 236 Pa. 276, the husband elected to take *against* his wife's will. He got a share of her estate under the intestate law, and he *also* got what she gave him by will to the extent that the will operated on the donor's estate. His taking *against* the will did not preclude him from receiving in addition thereto the share of an estate other than his

wife's, which she, the wife, gave him, the will exercising the power under the Act of June 4, 1879, P. L. 88, an act similar to that of 1917, *supra*.

From my reading of Kates's Estate, 282 Pa. 417, I do not understand that it was the intention of the Supreme Court to overrule Huddy's Estate, 236 Pa. 276. In fact, it refers to Huddy's Estate with approval. In Kates's Estate the donee of the power exercised the power in terms, and, having an estate of his own as well, blended the two and divided the entire fund between his wife and other named legatees. The wife elected to take against his will; she claimed a one-third interest in each estate. The result of her election would be to give her much more than it was her husband's purpose to give her *out* of his father's estate, the father being the *donor* of the power. In reversing the lower court, Mr. Justice Simpson said (at page 420): "If the decree of the court below is sustained, the widow will receive much more from the estate of the father than her husband directed she should have under the power of appointment vested in him." And at page 422: "Notwithstanding the foregoing authorities, appellee argues that her husband is to be considered as testate for the purpose of blending his own estate with the one over which he had a power of appointment, but intestate for the purpose of enabling her to obtain one-third of both estates. Of course, this contention cannot prevail."

To me, Kates's Estate, 282 Pa. 417, rests upon its own facts. Be that as it may, neither of these cases is authority in point. The widow elects to take under the will. The interpretation of the will, having due regard to the Act of 1917, *supra*, and of the donor's will, is the one question before me. I cannot concur in the argument of counsel for the sisters that testator manifested, by the wording of his will, an intention to place his wife on the same plane as a widow electing to take against her husband's will. If that construction were to be placed upon the words "such share of my estate as she is entitled to under the Intestate Laws of the State of Pennsylvania," the direction that she was to have a share not only in his own property, but of the property over which he had the right to appoint, could not be given effect. The result of such a construction would be to give the words "my estate" a more restricted meaning than would be given to them in connection with the gift to the sisters; but, as already stated, the words "my estate" must be considered, in the absence of any evidence to the contrary, as having the same meaning wherever used.

In my opinion, what testator intended was a reference to the intestate law for the purpose of ascertaining the fractional portion that she was to receive.

There is in this case no blending for all purposes: see Mitchell's Estate, 7 D. & C. 387. The appointed property passes as the property of Sarah S. Blackburne, and as the appointees are lineal descendants and the wife of a lineal descendant, there is no tax due the Commonwealth.

*T. R. White*, for exceptions; *E. S. Ward*, contra.

VAN DUSEN, J., Feb. 11, 1927.—Testatrix gave a certain part of her estate in trust for her son for life with power of appointment by will, and in default of appointment, to her two daughters. The son's will provided: "I give and bequeath to my wife Ida P. C. Blackburne such share of my Estate as she is entitled to under the Interstate Laws of the State of Pennsylvania And all the rest residue and remainder of my Estate Real, Personal and mixed of whatever kind and wheresoever Situate of which I may die seized and possessed I give, devise and bequeath to my two Sisters. . . ."

Blackburne's Estate.

The latter were the persons entitled in default of appointment. The Auditing Judge held that the wife was entitled to share in the appointed estate as well as in the appointor's own estate.

The Wills Act of June 7, 1917, § 11, P. L. 403, provides: ". . . A bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will."

If the appointor had simply given his estate in three parts to his widow and two sisters, there would be no question that the statute would give effect to the will as an exercise of the power of appointment. The exceptants stress the difference in phraseology between the two parts of the will and would make it read that the widow shall be entitled only to that which she can take against the will. Perhaps that is what he had in mind, but he did not say so. If he had, we would have a very different case, and would have the delicate task of comparing the decisions in Huddy's Estate, 236 Pa. 276, and Kates's Estate, 282 Pa. 417. The right to take against the will is not the same thing as the share under the intestate laws. This testator measures what his widow is to get by referring to her share under the intestate laws; and while he expressly gives only his own estate, by virtue of the statute he also gives the appointed estate. We see no difference between this method of describing the fraction and any other; and this was the view taken in the very similar case of Howell's Estate, 185 Pa. 350. See, also, Carrell's Estate, 264 Pa. 140, and Greaves's Estate, 29 Dist. R. 577.

The exceptions are dismissed and the adjudication is confirmed absolutely. Thompson, J., did not sit.