## Clark Estate

*Frank W. Ittel,* for daughters.

*D. L. McCaskey,* for widow.

*J. E. Hindman* and *James D. Harlan,* for trustees.

RAHAUSER, J., December 18, 1956.—James B. Clark died July 24, 1951, leaving a will dated August 3, 1949. He was survived by his widow, Alice G. Clark, and two daughters, Gertrude Clark Gellatly and Mary Clark Willey.

Letters testamentary were granted to Peoples First National Bank and Trust Company and James E. Hindman. The executors have filed their account, and it has come before the court for audit.

The residue of Mr. Clark's estate was bequeathed to Peoples First National Bank and Trust Company and James E. Hindman, trustees, in accordance with the third paragraph of his will which provides as follows:

"All the rest, residue and remainder of my estate, of whatsoever kind and nature and wheresoever situate, of which I shall died seised and possessed or to which at the time of my death I may be entitled, I give devise and bequeath to PEOPLES FIRST NATIONAL BANK & TRUST COMPANY, Pittsburgh, Pennsylvania, and JAMES E. HINDMAN, Esquire, as Trustees under that certain Revocable Life Insurance Trust Agreement dated August 3, 1949, and actually executed by me prior to the signing of this, my Will,

for the uses and purposes and subject to the terms, conditions and powers set forth in said Agreement."

The life insurance trust agreement, a copy of which has been stipulated into the record, provides for the corpus of the trust to be set up as follows:

". . . THE PARTIES HERETO AGREE that at the death of the Insured the Corporate Trustee shall collect the total amount of insurance then payable to it as Co-Trustee hereunder and the Trustees shall hold the amount so collected, together with any other property received by them from the Insured's estate *or from any other source,* upon the following Trusts.

"ARTICLE I. TRUSTS.

"A. In the event the Insured's wife, ALICE G. CLARK, is living at his death, the Trustee shall set aside in Fund 'A,' to be held for the exclusive use and benefit of the Insured's wife, ALICE G. CLARK, one-third (⅓) of *the principal in its hands.* . . .

"B. Any principal of the trust estate not held in Fund 'A,' as above provided for, shall be held in Fund 'B' and shall be divided into two equal shares. . . (Italics supplied.)

Alice G. Clark was the second wife of decedent. The daughters referred to above were daughters of the first wife of decedent.

On June 17, 1952, Alice G. Clark filed her election to take against the will of her husband, the decedent. She filed no election to take against the life insurance trust agreement.

The daughters take the position that since Alice G. Clark has filed her election to take against the will, she has no interest in the remainder of the testamentary estate and that the residue of the said estate should *not* be considered as trust "property received . . . from any other source." They further contend that the residue of the estate should be distributed directly to trust "B."

Mrs. Clark contends that the remainder of the estate, after she has received her third of the estate, goes into the insurance trust and is identified there as property received "from any other source" and that the funds from the insurance trust and the funds from the remainder of the testamentary estate are merged.

Counsel for Mrs. Clark contends that the provisions of the will add the residue of the testamentary estate to the corpus of the life insurance trust, that the trust agreement of the life insurance trust is a matter that is not before the court in the distribution of decedent's estate, that the court is bound to distribute the residue of the testamentary estate to the trustee of the insurance trust, and that how such funds shall be divided is a matter for the trustees under the insurance trust agreement.

The record is clear that Mrs. Clark did not elect to take against the insurance trust. The agreement providing for the insurance trust is a separate agreement. It is a part of the record by stipulation of counsel.

The court is of the opinion, however, that it has the right to review the provisions of the life insurance trust agreement in making distribution here. The Supreme Court has said by numerous decisions that the policy of law is against the widow taking against the will and profiting further from the remainder of the estate. In Kates' Estate, 282 Pa. 417, Mr. Justice Simpson said, at page 421, 422:

"In Hoover v. Landis, 76 Pa. 354, 356, the court below said: 'Her election destroys the will as to her, and she must take just what the law would give her had her late husband died intestate. There is no will, while she receives her share.' We affirmed, saying: 'This case is so well stated in the opinion of the court below, it is unnecessary to discuss it.' In Cunningham's Est., 137 Pa. 621, 628, we said: 'She must make her choice, and it is will or no will. . . . She has the

right to abide by her husband's disposition of his property, or the right to override it and claim under the intestate law. These rights are inconsistent and cannot coexist. She has always the choice which she will assert, but the choice is of one or the other, not both, and does not legally depend in any degree on the mention or omission of her in the will, or on the quantum of benefits she receives or renounces under it.' The same conclusion is stated in Powell's Est., 225 Pa. 518, 523; Murray's Est., 28 Pa. Superior Ct. 474, 476; Levengood's Est., 38 Pa. Superior Ct. 491, 500; and Dermond's Est., 55 Pa. Superior Ct. 453, 454. Notwithstanding the foregoing authorities, appellee argues that her husband is to be considered as testate for the purpose of blending his own estate with the one over which he had a power of appointment, but intestate for the purpose of enabling her to obtain one-third of both estates. Of course this contention cannot prevail."

If the remainder of the testamentary estate were decreed directly to the trustee under the insurance trust agreement, the widow would unjustly gain by participation in that portion of the testamentary estate which is distributable under the will.

The policy of our law gives the orphans' court the equitable power to carry out equity and good conscience in determining the effect of a widow's election.

The court is of the opinion that to permit the widow to take another one-third of the remaining two-thirds of the testamentary estate would be against the settled policy of our law. The Supreme Court said in France Estate, 352 Pa. 522, at page 525:

". . . The Orphans' Court, being a court of equity, is not bound to a rigid formula in determining the effect of the widow's election. *Each case is decided 'as equity and good conscience require, so that exact justice, as nearly as this is possible in human affairs, may*

*be done to all parties in interest'*: *Lonergan's Estate*, supra, (303 Pa. 142) 147. The disarrangement of testator's plan of distribution of his estate must be reduced to a minimum and his general scheme followed as closely as possible: *Forrest's Estate*, 343 Pa. 59, 60." (Italics supplied.)

Justice and equity require that the remainder of the testamentary estate be decreed to the trustee of the insurance trust with the specific direction that said funds be deposited and held in trust "B" of the insurance trust.

An additional question arose at the audit in this estate. It may be stated as follows: Where the widow of a decedent is entitled to property included in the gross estate for Federal estate tax purposes, but is not liable for any part of the Federal estate tax payable in such estate, is she entitled to a credit on the Pennsylvania inheritance tax payable on property received by her from such estate, where such inheritance tax payable by her in said estate was applied as a credit, in a limited amount, in determining the Federal estate tax in said estate?

The Federal estate tax statute gives credit for the inheritance tax paid the State in a limited amount.

The Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, provides in section 4(*b*) (3):

"Any credit for inheritance, succession or estate taxes or taxes in the nature thereof in respect to property or interests includible in the gross estate shall inure to the benefit of the persons or interests chargeable with the payment of such taxes to the extent or in proportion that the tax paid or payable reduces the estate tax."

The inheritance tax payable by Mrs. Clark reduces "the estate tax" in the same proportion that inheritance taxes payable by any other beneficiary reduce "the estate tax" because the credit (within the appli-

cable limit) depends on how much inheritance taxes are paid in the aggregate. If the total amount of inheritance taxes exceeds the total credit allowed by the Federal estate tax, then the beneficiaries must pay the portion of the inheritance tax not absorbed in Federal tax credit; the portion absorbed in Federal tax credit is apportioned as part of "the estate tax."

In Mellon Estate, 347 Pa. 520, at page 534, the Supreme Court said:

". . . It is urged that the Act of 1937 contemplates the apportionment only of the net payment of the federal estate tax made by fiduciaries, and therefore that there is no authority for the proration of *credits* against the gross tax, representing payments by the fiduciaries of normal state inheritance taxes. We believe that this construction of the Act is too narrow and is inconsistent with the legislative intention to effect equality of apportionment. The Act does not state, as the Commonwealth contends, that only the net sum actually paid in cash to the collector of the estate tax is to be apportioned. It provides that the 'estate tax' paid by the fiduciary to the Federal Government and the additional Pennsylvania estate tax paid by the fiduciary shall be apportioned. The Federal Government assessed a total estate tax of $37,-567,602.59 against the Richard B. Mellon estate. That tax was paid by the executors in part by cash and *in part by credits. The credits constituted part of such payment within the meaning of the Act of 1937, and we so hold.* The reasons or policy which motivated the Federal Government in permitting the estate tax to be so discharged in part, need not here concern us. Cf. *Knowles's Est.*, 295 Pa. 571." (Italics supplied.)

The same result was reached in Rieck's Estate, 98 Pitts. L. J. 525 (O. C., Allegheny). There President Judge Boyle held that the gross Federal tax had to be apportioned among all the assets of the estate, includ-

ing inter vivos trusts that would not otherwise have to pay inheritance tax, and indicated clearly in his opinion that inheritance taxes lose their identity as such to the extent that they constitute credit toward the Federal estate tax (98 Pitts. L. J. 525, at page 530) :

"Under the Federal Internal Revenue Code the normal State inheritance taxes are absorbed into the Federal Estate tax by being credited towards the payment thereof."

In view of the provisions of section 4(b) (3) of the Estate Tax Apportionment Act of 1951, supra, we are of the opinion that Mrs. Clark is entitled to a credit for the Pennsylvania inheritance tax payable by her to the extent that such tax payable by her reduces the Federal estate tax and that this credit should be applied to reduce the amount of the Pennsylvania inheritance tax payable by Mrs. Clark in this estate.

A decree will be prepared in accordance with this opinion.