# Hagen's Estate.

*Decedents' estates—Wills—Power of appointment—Exercise of power—Taxation.*

Ordinarily the donee of a power of appointment, in the exercise of the power, disposes of the estate as that of the donor. The appointment of the donee is referred back to the will of the donor and construed as if incorporated in the latter's will and testament. The appointees do not take through the donee; when his will, exercising the power, goes into effect the property vests in them under and by virtue of the original will creating the power.

Under a general power of appointment, the donee and appointor may make such an exercise of the power as virtually to amount to a gift of the fund to his own estate, thus subjecting it to the payment of the donee's own debts and distributing it as a part of his estate, in which event it will be subject to such transfer or inheritance taxes as may be collectible at the donee's death on an estate passing from him. But such an intent must be plainly expressed or clearly implied from the appointment. This result follows whenever the donee of the power either expressly or by implication appoints the fund for the payment of his debts or so blends the fund with his own assets as to make it impracticable to pay directly to his appointees.

Where a donee of a power of appointment has, by his will, included no provision for the payment of his debts out of the appointed estate, nor ordered such a general blending of his own estate as to create a fund out of which debts and legacies are payable, and no reason exists why the appointed estate should be administered through his executors, the power of appointment has not been exercised so as to cause the appointed estate to become part of that of the donee, or subject to the inheritance tax.

Argued March 12, 1925. Appeal, No. 74, Oct. T., 1924, by the executors and trustees, from the decree of O. C. Delaware Co., June T., 1923, No. 82, dismissing appeal from assessment of inheritance tax in the Estate of Christian Ax Hagen, deceased. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

.Appeal from assessment of inheritance tax. Before HANNUM, P. J.

The facts are stated ·in the opinion of the Superior Court.

The court dismissed the appeal. The executors and trustees appealed.

*Error assigned* was the decree of the court.

*George T. Butler,* and with him *Townsend, Elliott & Munson,* for appellants, cited: McCord's Est., 276 Pa. 459; Dohan's Est., 3 D. & C. Rep. 182; Huddy's Est., 236 Pa. 276.

*John Robert Jones,* Deputy Attorney General, and with him *William C. Alexander,* and *George W. Woodruff,* Attorney General, for appellee, cited: Howell's Est., 4 D. & C. Rep. 526; Gilliford's Est., 281 Pa. 582, 585; Wright v. Brotherton, 2 Rawle's Rep. 133; Stokes's Est., 20 W. N. C. 48.

OPINION BY KELLER, J., May 4, 1925:

Arthur Hagen, a resident of the City of Philadelphia, died March 22, 1908, leaving a last will and testament, wherein he gave one-fourth of his residuary estate to trustees, in trust to pay the net income thereof to his son Christian Ax Hagen, during his life and upon his death to pay over the principal to such persons and for such uses as his said son might by his last will and testament appoint; followed by provisions, not necessary to be referred to here, in default of such appointment. He also gave his son, Christian Ax Hagen, a contingent power of appointment by will over an additional two-fourths of his residuary estate disposed of in trust, of which another son, Arthur Hagen, Jr., was to receive the income during his life.

Christian Ax Hagen died on January 13, 1922, having made his last will and testament by which he specifically

disposed of that portion of the estate of his father of which he was given power of appointment. The question raised by this appeal is whether in so doing he distributed it as his own estate, and as such liable for the payment of his debts, or as the estate of his father, the donor; if the former, it passed subject to the transfer inheritance tax laws in force at the date of his death (Act of June 20, 1919, P. L. 521, as amended by Act of May 4, 1921, P. L. 341); if the latter, subject only to such inheritance taxes as were in effect at his father's death (Act of May 6, 1887, P. L. 79, as amended by Act of April 22, 1905, P. L. 258).

Ordinarily the donee of a power of appointment, in the exercise of the power, disposes of the estate as that of the donor. The appointment of the donee is referred back to the will of the donor and construed as if incorporated into the latter's will and testament. The appointees do not take through the donee; when his will, exercising the power, goes into effect the property vests in them under and by virtue of the original will creating the power: Huddy's Est., 236 Pa. 276, 281. "An appointee derives title immediately from the donor of the power, by the instrument in which it was created": Com. v. Duffield, 12 Pa. 277, 279. "It is not the estate of Alexander B. Bingham [the donee and life tenant], but that of William Bingham [the donor and original testator], which is the subject of the exercise of the power, and its situs being here, it was therefore controlled by our law": Agnew, J., in Bingham's App., 64 Pa. 345, 351; Aubert's App., 109 Pa. 447, 452. So in Com. v. Williams' Exrs., 13 Pa. 29, where Thomas Williams bequeathed certain property in trust for his daughter, Mary, during her life, and after her death the principal to such persons as she might appoint in writing, by her last will and testament; and she exercised the appointment by bequeathing the property to her brothers and sisters; it was held that they took the estate free of collateral inheritance tax; for though they were

126           HAGEN'S ESTATE.

only collateral relations of the donee, Mary Williams, they were lineal descendants of Thomas Williams, the donor, from whom the estate came. This is, likewise, clearly seen when we consider the subject of perpetuities; for in determining whether the exercise of a general power of appointment by will violates the rule against perpetuities, the gift made by the donee must be read into the will of the original testator, and be considered as having been made at the time of the creation of the power, not at the time of its exercise; and if, so read, it violates the rule against perpetuities the attempted exercise of the power is invalid to that extent: Cox v. Dickson, 256 Pa. 510; Crolius v. Kramer, 279 Pa. 275; Boyd's Est. (No. 1), 199 Pa. 487, 493, 494. As a matter of fact, in this very case the will of Christian Ax Hagen would have been an invalid exercise of the power of appointment given him by his father's will, as respects the disposition of one-half the trust estate created by him, after the death of his wife, if he had left any children born after the death of his father; for he directs it to be held in trust during their lives, thus postponing the possible vesting of that portion of the estate for a longer period than a life or lives in being, (as of the date of Arthur Hagen's death) and twenty-one years thereafter: Cox v. Dickson, supra.

Under a general power of appointment, the donee and appointor may, however, make such an exercise of the power as virtually to amount to a gift of the fund to his own estate, thus subjecting it to the payment of the donee's own debts and distributing it as a part of his estate, in which event it will be subject to such transfer or inheritance taxes as may be collectible at the donee's death on an estate passing from him. But such an intent must be plainly expressed or clearly implied from the appointment. This result follows whenever the donee of the power either expressly or by implication appoints the fund for the payment of his debts or so blends the fund with his own assets as to make it im-

practicable to pay directly to his appointees: Huddy's Est., supra, p. 281. Thus in McCord's Est., 276 Pa. 459, the donee of the power, Ella McCord, by her last will and testament provided: "1. It is my intention by this my will to dispose not only of all estate and property which I own or hold in my own right, but also all over which I have any power of appointment and especially that devised or bequeathed by the will of my father John D. McCord and it is my further intention that the entire estate and property shall be administered by my executors hereinafter named for the purpose of carrying out the provisions of my will. 2. I order and direct that my just debts and funeral expenses be paid by my said executors," followed by a general disposition of the blended estates. Construing this, the Supreme Court said, speaking through Mr. Justice WALLING: "The general rule undoubtedly is that an estate given under a power of appointment passes to the appointee from the donor and forms no part of the donee's estate: Huddy's Est., 236 Pa. 276, 281, and cases there cited; also Aubert's App., 109 Pa. 447; 31 Cyc. 1148. In such case, where the appointee is a lineal descendant of the donor, the legacy is not subject to a collateral inheritance tax: Com. v. Williams' Executors, 13 Pa. 29. Here, however, Ella McCord's power of appointment by will being unlimited, she could transfer the trust fund to her own estate and did so in unmistakable language, making it a part thereof for all purposes; her intent to do so is emphasized by the fact that her will makes no further mention of the power or trust fund. It thus became blended with her other property as one estate, from which debts and legacies were payable. Not one of the numerous pecuniary bequests is payable from any particular fund. She makes the trust fund a part of her own estate and then distributes the whole to the objects of her bounty, who take as her legatees." In Forney's Est., 280 Pa. 282, the will of the donee, Tillie May Forney, provided: "I. I direct my executor hereinafter

named to pay all my just debts and funeral expenses as
soon after my decease as may be found convenient. It
is my will that this direction shall include all such estate
or property as was given to me in and by the last will
and testament of my father John W. Forney bearing date
the fourth day of July, A. D. 1874, and respecting which
I was conferred with a power of appointment. II. All
the rest, residue and remainder of my estate, real, per-
sonal and mixed......including such property or estate
as was given to me by my father John W. Forney in and
by his last will and testament bearing date the fourth
day of July, 1874, and in the exercise of the power of
appointment therein conferred upon me in the name of
May Matilda, I give, devise and bequeath as follows":
Then follows a legacy in payment of specific indebted-
ness and a residuary bequest to her sister, Mary Forney
Thunder. The Supreme Court held that the donee had
the right to make such testamentary disposition of the
trust fund as she saw fit. "This enabled her to blend it,
as she did, with the estate held in her own right and to
dispose of the whole as one fund, first to her creditors
and the residue to her sister......The effect of Miss
Forney's will was to make the trust estate a part of her
own and then bequeath it as such to her legatees, who
take from her and not from her father."

In Penna. Co.'s Account, 264 Pa. 433, 436, the will of
the donee was construed as if it read: "Out of my own
estate and the estate derived under the deed of trust
executed by my mother Deborah A. Gay over which I
have power of appointment, 'I direct that my just debts
and funeral expenses be paid' and 'all the rest, residue
and remainder' thereof 'I give, devise, and bequeath' to
my son George W. Snare." In Stokes's Est., 20 W. N. C.
48, (referred to approvingly in Penna. Co.'s Account,
supra, 436-c), the appointor after providing for the pay-
ment of his debts and funeral expenses and devising his
house in fee to his wife, devised and bequeathed the
residue of his estate "of which I may die seised and pos-

sessed.....or over which I have or may have a power of appointment under the will of my grandfather" to his wife, for life, with remainder to his children. This clearly contemplated payment of his debts and funeral expenses out of the blended estates; and in construing the will, Judge PENROSE said: "In the present case the estate passing under the power has been blended with that belonging to the donee in his own right and the appointment is of a residue only. As this implies a previous administration of the fund and the payment thereout of debts, etc., the award must be to the executrix of the will of the donee and not directly to the ultimate appointee." On the other hand in Swaby's App., 14 W. N. C. 553, where payment of the appointor's general debts was not provided for in his will, although it was therein stated that he made his will acting under the power and authority conferred by the will of his uncle, Edward King, as well as in respect to his individual estate, it was held by the Supreme Court that the trust fund of which he had power of appointment was not subject to his debts but passed directly to the appointee from the donor.

The criterion thus stated by the Supreme Court, in determining whether the trust estate passes to the appointees from the donor or the donee, under a general or unlimited power of appointment is, was the effect of the donee's exercise of the power such as to transfer the trust fund to his estate and thus make it subject to the payment of his debts and pecuniary legacies to the same extent that his own estate was liable; were the two estates blended together so as to make them one common fund or estate, to be administered by the donee's executors, (Kates's Est., 282 Pa. 417, 425), and out of which, indiscriminately, his debts and legacies were to be paid?

The mere exercise of a general power of appointment does not in this State, as in England, make the trust estate assets for payment of the debts of the appointor: Dunglison's Est., 201 Pa. 592, 594. Nor does the Act of

130          HAGEN'S ESTATE.

June 4, 1879, P. L. 88, have any effect beyond executing the power; it does not transfer the estate: Huddy's Est., supra, p. 282. Thus in Terppe's Est., 224 Pa. 482, a widow having a life estate under her husband's will with testamentary power over the corpus of the estate, and also having a separate estate of her own, directed in the first clause of her will that all her debts should be paid; and in the residuary clause devised to an adopted son certain real estate which was a part of her husband's estate, charging it with certain encumbrances existing against it and the payment of certain legacies bequeathed in her will. It was held that the real estate was not charged with her general debts, and could not be sold to pay them. It follows that the real estate passed to the adopted son from the donor, not the donee of the power.

Let us now refer to the will in the present case and apply the principles to be deduced from the foregoing decisions.

First of all it is to be noted that the donee of the power, Christian Ax Hagen, makes no specific provision in his will for the payment of his debts. He does not refer to them. He declares that in his lifetime he had given to his wife all his household goods, furniture, jewelry, bric-a-brac, books, silver, pictures and ornaments, horses, carriages, automobiles and all property of personal and domestic use, and directs, therefore, that these shall not be included in any inventory of his estate. Secondly, he gives and bequeaths to his wife all his wearing apparel, and then provides: "Third, I declare it to be my intent and purpose to exercise and dispose of as part of my residuary estate in this will in the fullest, largest and most complete manner all powers of disposition and appointment given to, conferred upon, or vested in me expressly or by implication by any deed, will or other instrument whatever and particularly by the will of my father Arthur Hagen, dated September 15, 1905. Fourth. All the rest, residue and remainder of my estate, real, personal and mixed whatsoever and

wheresoever situate, including my general estate and in-
cluding also the principal of the one-fourth part of the
estate of my father, Arthur Hagen, of which by the terms
of his will dated the 15th day of September, 1905, and
probated at Philadelphia, I enjoy the income and over
which I have a power of appointment, and including also
the principal of the two-fourths part of the estate of my
father, Arthur Hagen, of which by the terms of his said
will my brother, Arthur Hagen, Jr., enjoys the income,
and over which I have also a power of appointment,
......I give, devise and bequeath to the Trustee herein-
after named, In Trust, however, as follows: [His wife
to receive the income for life and after her death the
principal to be divided into two equal parts; one such
part to be divided among his children and the issue of
any dead per stirpes; and the other to be held in trust
by said Trustee and the income paid to his children for
their respective lives, and on their successive deaths,
the principal to their children or issue per stirpes; and
in default of children or their issue as aforesaid, over,
etc.]".

It will be noted that Christian Ax Hagen did not di-
rect that the estate over which he had power of appoint-
ment by will should be disposed of as part of his estate
generally, but as part of his residuary estate. In view
of the fact that he had given no direction for the pay-
ment of his debts and no pecuniary legacies, we think this
use of the term significant. Residuary estate is defined
to be "what remains of a testator's estate after deduct-
ing the debts and the bequests and devises": 3 Bouvier's
Law Dict. 2920; "the surplus of the testator's estate
remaining after all the debts and particular legacies
have been discharged; what remains after the payment
of debts, funeral charges, expenses of administration, and
legacies": 34 Cyc. 1660. His use of the term,—bearing
in mind that the will contained no express direction to
pay debts, etc.,—is indicative of an intention that the
fund over which he had power of appointment should not

132　　　　　　　HAGEN'S ESTATE.

be subject to or used for the payment of his debts and therefore should not be blended with his estate generally, but should be differentiated so that his debts and any pecuniary legacies which he might give should be chargeable to and payable out of his own estate and that the balance, if any remaining, should be disposed of in the same way that he disposed of the appointed estate.

We have, then, applying the rule beforementioned, no authority express or implied in the donee's will for the payment of his debts out of the appointed estate; no complete or general blending of his own assets with the appointed estate, so as to create a fund out of which debts and legacies are payable or make it impracticable to pay directly to his appointees. No reason exists why the appointed estate should be administered through his executors. As was said in Huddy's Est., supra, p. 281, "So far as the record shows there is no difficulty in making the payments directly to those now entitled to take under the will of [Arthur Hagen] as designated in the will of the donee of the power." The appointed estate is not so completely and absolutely blended with his own estate as to subject it to payment of his debts or to transfer it to his own estate and from thence to his legatees subject to transfer inheritance tax as a part of his estate.

It is interesting to note that the Orphans' Court of Philadelphia County, whose decisions in McCord's Est., supra, and Forney's Est., supra, were affirmed by the Supreme Court, has filed opinions in several estates, since those decisions were made, which illustrate the differences and distinctions above referred to, and while they are not binding upon us, they have helped us in arriving at this conclusion. Dohan's Est., 3 D. & C. 182, is similar to this case, in that Mrs. Huneker declared her intention by her will to exercise her power of appointment as to her father's estate, "as part of and designating the same as my residuary estate." It differs from it in that Mrs. Huneker had previously directed her

just debts and funeral expenses to be paid. But the orphans' court distinguished it from McCord's Est. because, just as here, she "shows no intention on her part to make the appointed estate liable for the payment of her debts, funeral expenses or the legacies bequeathed by the third, fourth and fifth items of the will, but, on the contrary, she declares her intention that the only beneficiaries of the appointed estate shall be those taking under the residuary clause of her will"; hence it was held not to be subject to transfer inheritance tax as part of her estate. In Howell's Est., 4 D. & C. 526, there was as complete a blending of the donee's own estate with the appointed estate, as was present in McCord's Est.; the will first ordering the payment of the testator's debts and then expressly declaring his intention to exercise his power of appointment, directing "that the property over which I have the said power of appointment shall be disposed of as is in this will directed *in conjunction with my own estate.*" It was accordingly held to pass as the donee's estate and be subject to transfer inheritance tax as such. In Haven's Est., 5 D. & C. 494, the appointor or donee in her will did not direct the payment of her debts, but made a number of pecuniary bequests to be paid out of her personal estate; and left the residue of her estate to her sister; and then declared her will to be an exercise of the power of appointment she was authorized to make. The orphans' court held that the absence of the direction to pay debts together with certain provisions of the will evidencing her intention to confine the exercise of the power to her residuary estate distinguished the case from McCord's Est., and that the estate passing under the power of appointment was not subject to transfer inheritance tax as her estate.

On full consideration, we are of the same opinion here —that the appointed estate has not been transferred by the will of Christian Ax Hagen so as to become a part of his estate and subject it to transfer inheritance tax as such.

The assignments of error are sustained. The decree is reversed and the record remitted with directions to sustain the appeal from the appraisement for inheritance tax purposes. Costs to be paid by the appellee.