# Hagen's Estate.

*Wills—Power of appointment—Blending of estates—Taxation—
Inheritance tax—Decedents' estates—Acts of June 20, 1919, P. L.
521, and May 4, 1921, P. L. 341—Payment of debts.*

1. Where a testator, in making his will, exercises a power of
appointment, the fact that he makes no provision for payment of
his debts, is a circumstance, in connection with his disposition of
the residue, bearing on the question whether, in exercising the
power, he had blended his own estate with the appointive estate.

2. In such case, when testator spoke of the residue of his estate,
he must have known and necessarily meant that this was such part
of his estate as would remain after the payment of his debts.

3. Where a testator, without having given any direction as to
the payment of his debts, declares that it is his intention to dis-
pose of, as part of his "residuary estate," distributive estates over
which he has power of appointment, and in a subsequent clause,
disposes of all the residue of his estate, including the distributive
estates, he does not thereby blend the distributive estates with his
own.

4. In such case, the use of the word "residue," indicates an in-
tention that the fund over which testator had power of appoint-
ment should not be subject to or used for the payment of his debts
and therefore should not be blended with his estates generally, but
should be differentiated so that his debts and pecuniary legacies
should be payable out of his estate and that the balance, if any
remaining, should be disposed of in the same way that he disposed
of his appointed estate.

5. In such case it is significant of testator's intention that the
appointive estate did not go to his executors at all, but direct to
trustees.

6. The mere fact that the appointed estates are given to the same
persons who take the residue of the testator's individual estate, is
not the test to be applied in determining whether there has been
a blending of the two estates.

7. In such case, the real test is whether testator has treated the
two estates as one for all purposes and manifested an intent to com-
mingle them generally.

Argued January 11, 1926. Appeal, No. 340, Jan. T.,
1925, by Commonwealth, from judgment of Superior

Court, Oct. T., 1924, No. 74, reversing decree of O. C. Delaware Co., June T., 1923, No. 82, dismissing appeal from assessment of inheritance tax in estate of Christian Ax Hagen, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from Superior Court from decree of orphans' court. See 85 Pa. Superior Ct. 123.

The opinion of the Supreme Court states the facts.

Decree reversed. Commonwealth appealed.

*Error assigned* was, inter alia, judgment of Superior Court, quoting it.

*John Robert Jones*, with him *William C. Alexander*, and *George W. Woodruff*, Attorney General, for appellant.—"Blending," it would appear, is the effect of such an exercise of a power of appointment by will, whereby the donee of the power makes the appointed estate a part of his own estate and disposes of it as such: Forney's Est., 280 Pa. 282; Twitchell's Est., 284 Pa. 135.

Whether or not a donee of a general testamentary power of appointment has blended the appointed estate with his own is a question of intent: Gilliford's Est., 281 Pa. 582; Wright v. Brotherton, 2 Rawle 133; McCord's Est., 276 Pa. 459; Dohan's Est., 3 Pa. D. & C. R. 182; Haven's Est., 5 Pa. D. & C. R. 494; Kates's Est., 282 Pa. 417.

*Geo. T. Butler*, with him *Townsend, Elliott & Munson*, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, February 1, 1926:

Under the will of his father, Christian Ax Hagen had a power of appointment over one-fourth of the former's estate, and as to an additional one-half thereof which

was held in trust for a brother he also had a power of appointment if the latter died first and his children did not reach the age of twenty-one years.

The question we are to determine is whether Christian by his will so blended the estate over which he had the power of appointment with his own estate as to make that which he appointed subject to the tax imposed by the Act of June 20, 1919, P. L. 521, as amended by the Act of May 4, 1921, P. L. 341.

By his will, Christian Ax Hagen, after reciting that in his lifetime he had given to his wife all his household goods, furniture, jewelry and all other property of personal and domestic use, authorized her to dispose of his wearing apparel, and then provided: "Third: I declare it to be my intent and purpose to exercise and dispose of as part of my residuary estate in this will in the fullest, largest and most complete manner all powers of disposition and appointment given to, conferred upon, or vested in me, expressly or by implication by any deed, will or other instrument whatever and particularly by the will of my father, Arthur Hagen, dated September 15, 1905, over the one-fourth of his estate devised in trust to invest and pay over the net income therefrom to me during my life and upon my death to pay over the principal thereof to such persons as I by my last will may direct, and over the two-fourths of his estate devised and bequeathed in trust to invest and pay over the net income therefrom to my brother, Arthur Hagen, Jr., during his life and upon his death to pay the principal thereof, less certain deductions, to such persons as I by my last will may direct. Fourth. All the rest, residue and remainder of my estate, real, personal and mixed whatsoever, and wheresoever situate, including my general estate and including also the principal of the one-fourth part of the estate of my father, Arthur Hagen, of which, by the terms of his will dated the 15th day of September, 1905, and probated at Philadelphia, I

enjoy the income and over which I have a power of appointment and including also the principal of the two-fourths part of the estate of my father Arthur Hagen of which by the terms of his said will my brother, Arthur Hagen, Jr., enjoys the income, and over which I have also a power of appointment, and including any other powers of disposition or appointment given or conferred upon me, I give, devise and bequeath to the trustee hereinafter named, in trust, however, as follows": The net income to his wife for life and at her death the estate to be divided into two equal parts, one to be paid over to his children and their issue, and the other in trust for his children for life and upon their deaths to be divided in equal shares among their children per stirpes, with certain other provisions not necessary here to enumerate, including a number of specific legacies.

The testator made no provision in his will as to the payment of his debts, and, while it is not necessary to their payment that he should do so, this circumstance in connection with the devise of the residue of his estate has this bearing on the question with which we have to deal: When he spoke of the residue of his estate, he must have known and necessarily meant that this was such part of his estate as would remain after the payment of his debts. If he had devised his entire estate, together with the estates over which he had the power of appointment, putting all as it were in hotch pot, there then would be strong ground for holding that he had blended them, and the rule which we have heretofore applied in cases like McCord's Estate, 276 Pa. 459; Forney's Est., 280 Pa. 282; Kates's Est., 282 Pa. 417; and Twitchell's Est., 284 Pa. 135, would be applicable. As was said by the Superior Court in its opinion (85 Pa. Superior Ct. 123) now up for review, "His use of the term [residue], —bearing in mind that the will contained no express direction to pay debts, etc.,—is indicative of an intention that the fund over which he had power of appointment

should not be subject to or used for the payment of his debts and therefore should not be blended with his estate generally, but should be differentiated so that his debts and any pecuniary legacies which he might give should be chargeable to and payable out of his estate and that the balance, if any remaining, should be disposed of in the same way that he disposed of the appointed estate."

In McCord's Estate, the power of appointment was unlimited and the donee of the power could transfer the estate over which she had power of appointment to her own estate, which we determined she did, but in the pending case, it could not be said that the testator had made the appointive estate part of his own. In the McCord case, the testatrix said, "It is my intention by this my will to dispose not only of all estate and property which I own or hold in my own right but also all over which I have any power of appointment......and it is my further intention that the entire estate and property shall be administered by my executors hereinafter named for the purpose of carrying out the provisions of my will." This she followed with a direction for the payment of her debts and funeral expenses by the executors. There the intention to blend the two estates was unmistakable. If instead of opening the fourth paragraph of his will with the words "All the rest, residue and remainder of my estate," testator in the instant case had opened it with the words disposing of the estate over which he had the power of appointment and had followed them with the words "also all the rest, residue and remainder of my estate," no question could have arisen that he kept the two estates separate and that there was no blending. We think the reversed order does not indicate a different intention or bring about a different result.

In Forney's Estate, we said, "The effect of Miss Forney's will was to make the trust estate a part of her own and then bequeath it as such to her legatees, who take

from her and not from their father." We think this could not be said in the instant case any more than it could be said if a testator, having a specific piece of property, not his entire estate, should exercise a power of appointment over a fund which he thus could dispose of by creating a trust as to it and adding the specific property to the corpus of the trust.

It will further be noted that the appointive estates of which the testator in the instant case was making disposition need not and do not go to his executors at all but go direct to his trustees. It is by this made more manifest that he was not considering the appointive estates as his own and did not have the intent to blend them with his other possessions.

We are of opinion that it was not the purpose of the testator to blend the appointive estates with his own for all purposes, but what he intended was that the appointive estates should follow the same channels of distribution which he designed for the residue of his estate. The mere fact that the appointed estate is given to the same persons who take the residue of a testator's individual estate is not the test to be applied in determining whether there has been a blending of the two estates, but the real test under our line of decisions is whether the testator has treated the two estates as one for all purposes and manifested an intent to commingle them generally. It follows from what has been said that the estates over which the testator exercised his power of appointment are not subject to the tax.

The order of the Superior Court is affirmed.