Winsor's Estate.

428

John Russell, Jr., and Clement B. Wood, for exceptants.

William M. Boenning, contra.

STEARNE, J., Jan. 4, 1929.—The exceptions in this case are to an opinion *sur* appeals from appraisement of transfer inheritance tax. The primary question is one of blending; and the secondary question relates to the legality of the tax appraisement and assessment.

The rule is that when the instrument exercising the general power of appointment goes into effect, the appointee takes the estate under and by virtue of the original instrument creating the power and not under the instrument of exercise: Finn's Estate (No. 2), 18 Dist. R. 408; Huddy's Estate, 236 Pa. 276.

By legislative enactment (Wills Act of June 7, 1917, § 11, P. L. 403, re-enacting Act of June 4, 1879, § 3, P. L. 88), general devises or bequests of a testator are declared to operate as an exercise of all general powers of appointment, in the absence of a contrary intent in the will.

There is no blending where the will is silent as to testator's intent, and the appointment is exercised only by virtue of the operation of the statute: Mitchell's Estate, 7 D. & C. 387; Huddy's Estate, 236 Pa. 276.

A testator may choose to transfer the appointed estate to his own, make it a part thereof and dispose of the coalesced funds as one. His appointees

then take as nominees of the donee of the power and as a part of his estate, instead of that of the original donor. Whatever strong reasoning may have existed to the contrary (see dissenting opinion of Lamorelle, P. J., McCord's Estate, 2 D. & C. 130), this principle was firmly and decisively settled by McCord's Estate, 276 Pa. 459.

Real difficulty arises in seeking to discover the intent of a testator who uses language which creates confusion as to whether he intends to blend or whether he has treated his will merely as an instrument to pass his own individual estate, as such, to designated beneficiaries, and, at the same time and by the use of the same words, to pass the appointed estate, as such, to the same persons or for the same objects as he provides for his individual estate.

Consideration must be given, in discovering intention, to extrinsic facts and circumstances which show, or tend to indicate, intention to blend; sic., where a testator, in disposing of both estates, bequeaths legacies in excess of the value of his own estate: South's Estate, 248 Pa. 165.

Likewise, attention must be given to testator's provisions, expressed or implied, as to the payment of debts. It is important, as evidence of intention, whether such debts are payable out of the combined estates or are relegated to the individual estate: Hagen's Estate, 85 Pa. Superior Ct. 123; 285 Pa. 326; Morton's Estate, 10 D. & C. 255.

Another element of importance is the location of the dispositive clause, as well as the intended scope of its operation: Hagen's Estate, *supra;* Dohan's Estate, 3 D. & C. 182; Haven's Estate, 5 D. & C. 494.

As concisely stated by Gest, J., in Tobey's Estate, 10 D. & C. 227, 229: "After all, blending is a question of intention. . . ."

The leading cases where the language is held to be expressive of an intent to blend are: McCord's Estate, 276 Pa. 459; Forney's Estate, 280 Pa. 282; Kates's Estate, 282 Pa. 417; Twitchell's Estate, 284 Pa. 135; Com. *v.* Morris, 287 Pa. 61; Howell's Estate, 4 D. & C. 526; Tobey's Estate, 10 D. & C. 227; Morton's Estate, 10 D. & C. 255.

To recite the controlling language in each of the foregoing cases would add little to this opinion. It suffices to note that in each instance the test applied was to ascertain whether the effect of the disposition was to make the trust estate a part of the testator's own and then to dispose of both estates as an entirety. Declarations of intent in the preamble, directions to pay to executors for purposes of distribution, payment of debts and deficiency of personal estate to pay legacies are all elements of consideration in reaching the conclusion as to intent to blend.

Illustrative of cases where it has been held that there is no blending are: Hagen's Estate, 85 Pa. Superior Ct. 123; 285 Pa. 326; Dohan's Estate, 3 D. & C. 182; Haven's Estate, 5 D. & C. 494.

In Hagen's Estate, *supra,* there was no specific provision for the payment of debts; testator made certain bequests and declarations concerning the disposition of his personal property and then, by the third item in his will, declared that the estate over which he had power of appointment should be disposed of as part of his residuary estate.

The Supreme Court affirmed the Superior Court in holding that there was no blending. The opinion of Judge Keller is illuminating as to the reasoning of the court: "It will be noted that Christian A Hagen did not direct that the estate over which he had power of appointment by will should be disposed of as part of his estate generally, but as part of his residuary estate. In view of the fact that he had given no direction for the payment of his debts and no

pecuniary legacies, we think this use of the term significant. Residuary estate is defined to be 'what remains of a testator's estate after deducting the debts and the bequests and devises:' 3 Bouvier's Law. Dict., 2920; 'the surplus of the testator's estate remaining after all the debts and particular legacies have been discharged; what remains after the payment of debts, funeral charges, expenses of administration, and legacies:' 34 Cyc., 1660. His use of the term,—bearing in mind that the will contained no express direction to pay debts, etc.,—is indicative of an intention that the fund over which he had power of appointment should not be subject to or used for the payment of his debts, and therefore should not be blended with his estate generally, but should be differentiated so that his debts and any pecuniary legacies which he might give should be chargeable to and payable out of his own estate and that the balance, if any remaining, should be disposed of in the same way that he disposed of the appointed estate."

In Dohan's Estate, *supra*, the words of the will clearly indicated that the only beneficiaries of the appointed estate were those taking under the residuary clauses of the will. While there are directions here as to payment of debts, there is no evidence of intention to make the appointed estate liable for them or for the payment of her legacies.

In Haven's Estate, *supra*, there is no direction to pay debts; testatrix made a number of pecuniary bequests to be paid out of her personal estate and left the residue of her estate to her sister; she then declared her will to be an exercise of the appointment she was authorized to make. As pointed out by Judge Henderson (page 496), all of the items down to No. 11 related to her own individual estate; then followed the exercise of the power, *showing the intent to give the entire appointed estate to her residuary legatee.*

Dohan's Estate and Haven's Estate are cited with approval by the Superior Court in Hagen's Estate.

In the case now before us, the opinion of the Hearing Judge carefully considered all of the foregoing authorities, and has correctly and accurately applied the principles they establish. We agree with him that the case is ruled by McCord's Estate and Com. *v.* Morris.

The will says in its preamble: "and intending hereby to exercise any and all powers in me vested. . . ." Testatrix directs the payment of her debts and funeral expenses; she bequeaths legacies in excess of the aggregate amount of her individual estate, and in her residuary clause provides for the disposition of "all the rest, residue and remainder of my said estate, real, personal and mixed, whatsoever and wheresoever and whether vested or in trust, subject to my power of disposition, limitation or appointment. . . ."

A majority of the court agrees with the Hearing Judge that the effect of Mrs. Winsor's testamentary disposition was to make the trust estate a part of her own generally, and that both estates were disposed of as an entirety, and that, therefore, there was a blending.

The objection to the legality of the tax appraisement and assessment rests upon an extremely narrow and technical ground. Appellants claim that the assessment of Nov. 18, 1927, unappealed, became final, and, therefore, the assessment of Feb. 8, 1928 (which is appealed from), is invalid.

Our examination of the record fails to convince us that there is any merit in this contention. All that the assessment of Nov. 18, 1927, attempted or purported to do was to fix the tax upon the suspended item in the prior appraisement. Upon its face the assessment did not seek to settle or finally determine the taxability of the estate generally. It is undisputed that neither

the fiduciaries, their counsel, nor the register, ever considered that the appointed estate of William Winsor was part of the estate of Elizabeth C. Winsor until the matter was developed at the audit, by the Auditing Judge. According to the testimony, upon the filing of the adjudication, and as a matter of routine, the clerk of the court notified the register that the suspended claim had been adjudicated, whereupon the assessment of Nov. 18, 1927, was made and tax thereafter paid. It is obvious that this was the intended scope of the assessment. It is apparent that there was no contemplation that such assessment was a final and conclusive determination of the taxability of the entire estate. As pointed out by the Auditing Judge, and to which we cannot profitably add, it was not such a final and conclusive appraisement, made by an appraiser, upon his own judgment, deliberately reached upon knowledge of all the facts, as in the Moneypenny Estate, 181 Pa. 309.

It is argued that, even though there be a blending, it is not taxable within the language and meaning of the Inheritance Tax Act of June 20, 1919, §§ A and D, P. L. 521, because the donee did not die "seized or possessed of the property." Counsel quotes the dissenting opinion of our President Judge in McCord's Estate, 2 D. & C. 130. Attention is directed, however, to the fact that the Supreme Court did not follow this reasoning, and affirmatively declared (276 Pa. 459), that a donee may appoint to his own estate, whereupon it becomes part thereof, and passes as a part of such estate, the same as any other property which the decedent might own or possess.

The exceptions are dismissed.

VAN DUSEN, J., concurring.—In an opinion filed in Valentine's Estate, I stated what seemed to me to be the difference between Hagen's Estate, 285 Pa. 326, and the numerous cases which come to the opposite conclusion, of which Com. v. Morris, 287 Pa. 61, is the most recent example. In Hagen's Estate, the appointed estate was not available to pay debts, because there was no direction to pay debts, and only the testator's act can make the appointed estate available for that purpose.

The present case is, however, like the Morris case. The preamble recites the power, and there is a direction to pay debts (though the report of the Morris case does not show it), some pecuniary legacies and a residuary clause. The appointed estate, therefore, becomes available for all possible purposes and blending results.

The ninth clause mentions the power again, but only to dispose of the "residue" of testatrix's own estate and of the appointed estate. This shows that she regarded the other part of the will as exercising the power also, and emphasizes the preamble. The dissenting opinion minimizes the recital in the preamble (though there was nothing more than such a recital in the Morris case) and gives effect only to the mention of the power in the ninth clause, overlooking the fact just noted that this clause deals with the residue of both estates. I would give effect to both references to the power. If this is not done, the appointed estate is not available for pecuniary legacies, though it has been used for that purpose without objection.

HENDERSON, J., dissenting.—The question in the instant case is one of blending. In Com. v. Morris, 287 Pa. 61, Mr. Justice Schaffer, quoting Hagen's Estate, 285 Pa. 326, said: "The real test (as to whether there has been a blending) under our line of decisions is whether the testator has

432

treated the two estates as one for all purposes and manifested an intent to commingle them generally."

This case has been treated as one of inferential intent, whereas, in my opinion, it is not necessary to resort to inference when the will furnishes the true guide—an express intent.

The inference has been sought from the fact that she (1) recites her purpose to exercise her power of appointment under her husband's will; (2) directs the payment of debts and funeral expenses; (3) gives pecuniary legacies in excess of her individual estate; (4) directs payment out of her own residuary estate of all taxes on the estate, legacies or devises; and (5) uses a form of residuary clause out of which an inference is sought and which inference I regard as unwarranted under Hagen's Estate, *supra*.

The expression in the preamble of an intent to exercise by the will the general power of appointment adds little, if anything, to the statutory intent arising by virtue of the Wills Act of June 7, 1917, § 11, P. L. 403. Without more, the statutory intent has been held insufficient to work a blending. See Huddy's Estate, 236 Pa. 276. The direction to pay debts and funeral expenses would be implied by law and it has been held that even an express direction to pay debts does not in itself create a blending for all purposes: Terppe's Estate, 224 Pa. 482. See, also, Fell's Estate, 14 Dist. R. 327, and Mitchell's Estate, 7 D. & C. 387.

It has been urged with vigor that the deficiency of her own estate to meet the legacies should be given great force. But why so, when we have an express disposition of the appointed estate to the residuary legatees? Many testators make the mistake of bequeathing more than they have.

This testatrix has disposed of the appointed estate in the following clause:

"IX. All the rest, residue and remainder of my said estate, real, personal and mixed, whatsoever and wheresoever and whether vested or in trust, subject to my power of disposition, limitation or appointment, I give, devise and bequeath to my dear daughters, the said Emily C. Philler and Louise B. W. Furness, to be divided equally between them."

In Hagen's Estate, *supra*, the clauses disposing of the appointed estate were as follows:

"Third. I declare it to be my intent and purpose to exercise and dispose of as part of my residuary estate in this will in the fullest, largest and most complete manner all powers of disposition and appointment given to, conferred upon, or vested in me, expressly or by implication by any deed, will or other instrument whatever and particularly by the will of my father, Arthur Hagen, dated September 15, 1905, over the one-fourth of his estate devised in trust to invest and pay over the net income therefrom to me during my life and upon my death to pay over the principal thereof to such persons as I by my last will may direct, and over the two-fourths of his estate devised and bequeathed in trust to invest and pay over the net income therefrom to my brother, Arthur Hagen, Jr., during his life and upon his death to pay the principal thereof, less certain deductions, to such persons as I by my last will may direct.

"Fourth. All the rest, residue and remainder of my estate, real, personal and mixed whatsoever, and wheresoever situate, including my general estate and including also the principal of the one-fourth part of the estate of my father, Arthur Hagen, of which, by the terms of his will dated the 15th day of September, 1905, and probated at Philadelphia, I enjoy the income and over which I have a power of appointment and including also the principal of the two-fourths part of the estate of my father Arthur Hagen of which by

the terms of his said will my brother, Arthur Hagen, Jr., enjoys the income, and over which I have also a power of appointment, and including any other powers of disposition or appointment given or conferred upon me, I give, devise and bequeath to the trustee hereinafter named, in trust, however, as follows:"

The net income to his wife for life and at her death the estate to be divided into two equal parts, one to be paid over to his children and their issue, and the other in trust for his children for life, and upon their deaths to be divided in equal shares among their children *per stirpes*, with certain other provisions not necessary here to enumerate, including a number of specific legacies.

In holding that this language did not create a blending, Mr. Justice Schaffer said:

"If, instead of opening the fourth paragraph of his will with the words 'All the rest, residue and remainder of my estate,' testator, in the instant case, had opened it with the words disposing of the estate over which he had the power of appointment and had followed them with the words 'also all the rest, residue and remainder of my estate,' no question could have arisen that he kept the two estates separate and that there was no blending. We think the reversed order does not indicate a different intention or bring about a different result. . . .

"We are of opinion that it was not the purpose of the testator to blend the appointive estates with his own for all purposes, but what he intended was that the appointive estates should follow the same channels of distribution which he designed for the residue of his estate. The mere fact that the appointed estate is given to the same persons who take the residue of a testator's individual estate is not the test to be applied in determining whether there has been a blending of the two estates, but the real test under our line of decisions is whether the testator has treated the two estates as one for all purposes and manifested an intent to commingle them generally. It follows from what has been said that the estates over which the testator exercised his power of appointment are not subject to the tax."

I can find no substantial difference between the instant and Hagen wills, and submit that Hagen's Estate rules this appeal.

Com. *v.* Morris, *supra,* is distinguishable, in that the residuary clause operates upon the appointed estate by virtue of section 11 of the Wills Act, and does not contain, as in the instant case, an express clause disposing of the appointed estate to those who take the residuary estate.

The same persons take the residue and the appointed estate and this fact does not constitute a blending. One of the briefs suggests that this doctrine, so difficult of application, should have engrafted upon it the theory of a *pro tanto* blending. This would only lead to further refinements.

To sum up, in all these cases of blending where the question is whether the appointed estate is *liable for taxation* as that of the donee, the sole question is, did the donee of the power make the appointed estate his own *for all purposes;* did he, in other words, by appointing to his own estate, commingle both estates generally into one common fund to be administered as such together? Hagen's Estate, 285 Pa. 326. It is not sufficient to show that the appointed estate is made liable for the donee's debts, or that it was made liable for the donee's legacies, or that it was given to the same persons who take the donee's individual estate. In order to tax the appointed estate it must appear, and I think appear clearly, that the donee by his will merged it for all purposes with his own. This was the ratio *decidendi* of McCord's Estate, the

decision of which should not be extended to cases where the same facts do not substantially exist.

See, also, Valentine's Estate [11 D. & C. 434], recently affirmed by this court, upon the equal division thereof.

I would sustain the exceptions.

GEST J., joins in this dissent.