J. Gilmore Fletcher, Executor of the Estate of Joseph Riter, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 51679.   Promulgated December 6, 1933.

George B. Berger, Esq., for the petitioner.
Frank T. Horner, Esq., for the respondent.

## OPINION.

SMITH: The first question presented by this proceeding is whether the property included in the testamentary trust over which the decedent, Joseph Riter, exercised the power of appointment is includable in the gross estate. The applicable provision of the statute

relating thereto is section 302 of the Revenue Act of 1926, which, so far as material, reads as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth; and

\* \* \* \* \* \* \*

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estate, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

\* \* \* \* \* \* \*

The petitioner contends that the power of appointment in this case is a " special or limited power " and not a " general power " and therefore that the Commissioner erred in including in the gross estate the value of the appointive property. It is the respondent's contention that the value of the appointive estate passed under a general power of appointment within the contemplation of the statute and therefore that its value was properly included in the gross estate.

A power of appointment is general when it is exercisable in favor of any person the donee may select, and special or limited when it is exercisable only in favor of persons or a class of persons designated in the instrument creating the power. *Fidelity-Philadelphia Trust Co.* v. *McCaughn,* 34 Fed. (2d) 600; certiorari denied, 280 U. S. 602; *Farmers Loan & Trust Co.* v. *Bowers,* 29 Fed. (2d) 14.

Under the will of his father, the decedent had a power to appoint the trust estate left by his father " for such person or persons as my said son Joseph, by his last will and testament, may direct, limit and appoint." It is to be noted that there is no provision that the decedent, Joseph Riter, could appoint the estate to a corporation. But the phrase " person or persons " is usually held to include corporations unless there is a provision in the power that appointment may not be made to a corporation. It was held in *Farmers' Loan & Trust Co.* v. *Shaw,* 56 Misc. Rep. 201; 107 N.Y.S. 337, that an appointment may be made to a corporation under a power to appoint in any person. This decision was affirmed, *Farmers' Loan & Trust Co.* v. *Shaw,* 111 N.Y.S. 1118; 127 App. Div. 656.

The petitioner makes the contention that inasmuch as under the will of Thomas B. Riter the decedent could not have exercised a

power of appointment except by will, that the power was " special " and not " general." We are of the opinion that the point is not well taken. As was stated by the court in *Whitlock-Roso* v. *McCaughn*, 21 Fed. (2d) 164:

\* \* \* The power which the Congress had in mind, and which it called " general ", was a power which could be exercised by either *will* or *deed*, and did not have to include both. A decedent could select either method, by will or deed, by which a power could be exercised by a donee. Either method, if the donee of the power is not restricted as to appointees, complied with the statute, and the power is general.

The petitioner further argues that inasmuch as the decedent, Joseph Riter, could not have exercised the power if he had left issue surviving, the power is limited and not general.

The petitioner's contention upon this point is not well founded. There was a contingency to the exercise of the power. The power could not have been exercised by the decedent except upon the condition that he died without issue surviving. But a contingency or condition of this character does not change a general power into a special power. Conditional powers or powers upon condition similar to that in this proceeding have been before the Pennsylvania courts on a number of occasions and the courts have consistently held that the condition did not change a general power into a special power. *In re Forney's Estate*, 280 Pa. 459; 124 Atl. 424, dealt with a testamentary power similar to the one in the present instance. There, as to a share of his estate, the donor of the power created a testamentary trust with a life estate to his daughter:

\* \* \* and after the death of the daughter he bequeathed the same to her child or children, but, should she die without leaving child or children, then said share to be paid to such person or persons as the daughter so dying should \* \* \* by any last will and testament, or instrument in the nature thereof, direct, limit, and appoint \* \* \*

Having so died, the daughter exercised the power in favor of her sister, but since in so doing she made the property a part of her own estate for all purposes, it was held that her exercise of the power was subject to inheritance tax. The later case of *In re Twitchell's Estate*, 284 Pa. 135; 130 Atl. 324, characterizes the power involved in *In re Forney's Estate*, *supra*, as a " general power."

In *Cowman* v. *Classen*, 156 Md. 428; 144 Atl. 367, the donor of the power gave his wife a life estate, a succeeding life estate to his daughter, and a remainder to the daughter's issue, " but should she however die without issue living at the time of her death then and in that event one-half part thereof, my trust estate, \* \* \* I give, devise and bequeath to such person or persons or body corporate \* \* \* as she may by her last will and testament designate

or appoint." The daughter died without issue, and by her will made disposition of the property over which she had power of appointment. The court held this was a general power of appointment. The court stated:

\* \* \* It was a general power, presently given to a designated person, and the contingency upon which it was to arise could not be finally ascertained until the donee's death, and, necessarily, the will by which the power was to be exercised had to be executed during the lifetime of the donee, and so before the contingency upon which the power depended could be made certain.

\*        \*        \*        \*        \*        \*        \*

It seems settled law that, where the authority to execute a power is dependent upon a contingent event, it may be exercised before the happening of the contingency, and the execution will be valid when the contingent event subsequently occurs; and this is unquestionably true from the necessity of the case, when the happening of the event cannot be ascertained until the moment of the donee's death, as when the event is the dying of the donee without issue living at his death. \* \* \* [Citing numerous cases.]

In support of his contention that the power exercised by the decedent was a special power and not a general power, the petitioner urges upon the Board the decision of the District Court for the Eastern District of Pennsylvania in *Fidelity Trust Co.* v. *McCaughn*, 1 Fed. (2d) 987. There the donee of the power was given power to appoint by her will to whomsoever she chose over the time she "remains unmarried." The donee remained unmarried and by her will exercised the power. The court held that the power exercised was a special power and not a general power inasmuch as the power of disposition denied to the donee control over what should become of the property during her lifetime; that since the duration of time or possession of the power was limited it could not be held to be a general power. This decision appears to the Board to be out of line with the great weight of legal authority. In any event, the Board is of the opinion that a condition which may exist with respect to the exercise of a power of appointment has no bearing upon the question of whether it is a general power of appointment or a special power of appointment. The contentions of the respondent upon this point are sustained.

The second question for our consideration is whether the amount of the estate tax should be credited with the amount of the collateral inheritance tax paid to the Commonwealth of Pennsylvania. The respondent contends that it should not be by virtue of section 301 (b) of the Revenue Act of 1926, as amended by section 802 of the Revenue Act of 1932. Section 301 (b) of the Revenue Act of 1926 provides:

The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in

the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section, and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304.

Section 802 of the Revenue Act of 1932 provides, so far as material, as follows:

(a) Section 301 (b) of the Revenue Act of 1926 is amended to read as follows:

"(c) The tax imposed by subdivision (a) of this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent). The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by subdivision (a) (after deducting from such tax the credits provided by subdivision (b)), and shall include only such taxes as were actually paid and credit therefor claimed within four years after the filing of the return required by section 304, * * *"

The reason for amending section 301 (b) of the Revenue Act of 1926 by incorporating therein the parenthetical clause "not including any such taxes paid with respect to the estate of a person other than the decedent" is stated in the Ways and Means Committee Report on the Revenue Bill of 1932 (Rept. No. 708, 72d Cong., 1st sess., p. 46), as follows:

Subsection (a) of this section amends subdivision (b) of section 301 of the Revenue Act of 1926. The changes are:

(1) A clarifying provision to remove any basis of a claim for credit for State death taxes paid with respect to another person's estate, where the property is included in the decedent's estate.

Upon this point the petitioner submits, that at the time of the death of Thomas B. Riter there was no inheritance tax imposed by the laws of the Commonwealth of Pennsylvania on assets or property passing from any person dying seized or possessed thereof to or for the use of a father, mother, husband, wife, children, and lineal descendants born in lawful wedlock, children of a former husband or wife, or a widow of the son of the person dying seized or possessed thereof where such persons were or are commonly known and designated as direct heirs in the laws and decisions of the Commonwealth of Pennsylvania; but that there was at the time of the death of Thomas B. Riter an inheritance tax, known as a collateral inheritance tax, imposed on assets or property passing from any person dying seized or possessed thereof to any person or persons or to bodies corporate or politic, other than persons designated as direct heirs, and that such person or persons or bodies corporate or politic, other than direct heirs, were and are commonly known or designated by the laws and decisions of the courts of Pennsylvania as collaterals

or collateral heirs; further, that under the laws of the Commonwealth of Pennsylvania and the State of Florida the will of Joseph Riter speaks as of the date of his death and that under these laws the will did not become operative or effective until the date of his death, and that under these laws no part of the property of the testamentary trust created by the will of Thomas B. Riter passed under the power of appointment exercised by Joseph Riter until May 16, 1928, the date of the death of Joseph Riter. These propositions of law are not denied by the respondent and the Board finds them to be sound.

The question remains, however, as to whether the collateral inheritance taxes paid to the Commonwealth of Pennsylvania on December 27, 1928, in the amount of $79,094.38, were taxes paid with respect to the estate of a person other than the decedent.

The collateral inheritance tax law of the Commonwealth of Pennsylvania as it existed at the date of the death of Thomas B. Riter in 1907, had, with slight modifications, long been in effect. There have been many decisions of the courts of Pennsylvania bearing upon the nature of the tax. The fundamental thought in enacting the Collateral Inheritance Tax Act of 1887, which with slight modification was in effect in 1907, was to levy a toll against the passing of property of citizens going by reason of death to collaterals in whatever light the taking might be viewed. *Shugars* v. *Chamberlain Amusement Enterprises*, 130 Atl. 426, 427. In that case it was stated that "the tax springs into life on the death of property owners; *eo instanti* it becomes seated on their estates." The court further stated, referring to *Coxe's Estate*, 193 Pa. 100; 44 Atl. 256:

* * * We held that under the will these persons could only be determined after the termination of the life estate through the death of the widow. The tax under the act did not become due and payable until the specified contingency happened; at that time the value of the property as it then existed was to be used as the basis of assessment on which the tax must be declared. * * *

From the above decisions of the Supreme Court of Pennsylvania it is apparent that the collateral inheritance tax paid on December 27, 1928, to the Commonwealth of Pennsylvania was an excise tax, which attached to the trust estate created by the will of Thomas B. Riter in respect of that estate passing to collaterals. The appointee of property under a general power of appointment receives that property from the donor under Pennsylvania law. *In re Hagen's Estate*, 285 Pa. 326; 132 Atl. 175; *In re McCord's Estate*, 276 Pa. 459; 120 Atl. 413; *In re Forney's Estate, supra; In re Kates' Estate*, 282 Pa. 417; 128 Atl. 97; *In re Twitchell's Estate, supra; In re Valentine's Estate*, 297 Pa. 99; 146 Atl. 453. It is true that the tax attached to that estate by reason of the fact that it passed to collater-

als by virtue of the exercise of the power of appointment by Joseph Riter. But the tax attached not by virtue of his exercise of appointment, but by the fact that the property passed to collaterals. If the property had passed to collaterals by reason of the nonexercise of the power of appointment by Joseph Riter, the tax would nevertheless have attached. With these facts in mind we think that it is clear that the collateral inheritance tax paid to the Commonwealth of Pennsylvania was not paid with respect to the estate of Joseph Riter.

The petitioner argues that this interpretation of the statute defeats the intention of Congress with respect to crediting the amount of the Federal estate tax with the amount of the inheritance tax paid to a state. But this is not necessarily so. By section 303 (b) (2) of the Revenue Acts of 1924 and 1926, the Congress has permitted the deduction from the gross estate of—

An amount equal to the value of any property (A) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, or (B) transferred to the decedent by gift within five years prior to his death, where such property can be identified as having been received by the decedent from such donor by gift or from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. * * *

This provision was designed to exempt from the incidence of the estate tax property included in the gross estate which had been subject to estate tax within a period of five years. Clearly, if Thomas B. Riter's estate had been subjected to the payment of an inheritance tax to the Commonwealth of Pennsylvania upon his death in 1907, it could not be argued that the Federal estate tax payable upon the death of Joseph Riter is entitled to be credited with the amount of the tax paid on the estate of Thomas B. Riter of many years before.

It is not the province of this Board to speculate as to what the intention of Congress was with respect to the allowance of a credit against the Federal estate tax of the amount of inheritance tax paid to a state. Where the language of the statute is unambiguous, resort may not be had to principles of interpretation applying to ambiguous language. The only question which we have to decide is whether the collateral inheritance tax paid to the Commonwealth of Pennsylvania on December 27, 1928, was paid with respect to the estate of the decedent. We are of opinion that it was not. The action of the respondent in refusing to credit the amount of the Federal estate tax with the collateral inheritance tax paid is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

514

SEAWELL, dissenting: The estate of Joseph Riter, by reason of the exercise by him of a power under Thomas Riter's will, paid to the State of Pennsylvania the succession tax in controversy and should, in my opinion, be credited with the proper amount thereof in computing the estate tax of Joseph Riter.