## Scott Estate.

Argued September 25, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

R. W. Archbald, Jr., with him Archbald & Busser, for appellant.

George Scott Stewart, Jr., with him Robert D. Abrahams, for appellee.

OPINION BY BALDRIGE, P. J., October 24, 1945:

George E. Scott died testate July 5, 1928. In his will he gave to his wife, Marie Jansson Scott, and Charles E. Wiley in trust "all stock or interest held or owned by me in such coal mining corporations or other corporations connected with such business that I may own at the time of my decease" and directed the trustees to collect rents, interest, dividends, etc., and to pay over the income therefrom to Marie Jansson Scott during her life and at her death to pay the principal to such persons as she by will might appoint. There was a gift over to the testator's next of kin under the intestate laws, in default of appointment. The testator authorized and empowered his trustees to make sale of any of his estate "excepting always my coal interest already referred to."

Marie Jansson Buzby, formerly Scott, died testate December 26, 1943. She exercised the power conferred by the will of George E. Scott and in her will gave the appointed estate to the Woodland Presbyterian Church. Charles E. Wiley the other trustee having previously died, an account was filed by Gilbert C. Fry, executor of Mrs. Buzby. This account shows that Mrs. Buzby and her co-trustee sold on June 3, 1932, for $2,000, 166⅔ shares of Stineman Coal Mining Company stock, part of the "coal interests" expressly excepted by the testator in the power to sell. That sum was not included in the account, and it never came into the hands of Seibert, the substituted trustee in the George E. Scott es-

tate. It is admitted that Mrs. Buzby received this money and failed to account therefor. The substituted trustee seeks to surcharge her estate with this sum applied to her own use.

The adjudicating judge upheld the charge that Mrs. Buzby misapplied the trust fund as she only had a general power of disposal and not the right to secretly divert it from the purpose expressed in testator's will. He held that "Mrs. Buzby had a right to appoint the fund to whomever she pleased by will, but she could appoint by will only and this limitation required that the trust continue until her death." He surcharged Mrs. Buzby's estate in the sum of $2,000. Upon appeal the court in banc affirmed the adjudication, holding that although Mrs. Buzby was given a general testamentary power of appointment, there was an alternative disposition of the trust property and in the event of her failure to exercise the power, provision was made for its distribution; that in such circumstances she could not, by appropriating the money to her own use, terminate the trust without a joinder of the contingent remaindermen.

The appellant, who contends that neither the substituted trustee nor the Woodland Presbyterian Church, appointee of Mrs. Buzby, may complain of her appropriation of the fund in question, relies principally upon *Lyon v. Alexander,* 304 Pa. 288, 156 A. 84, *Curran's Estate,* 312 Pa. 416, 167 A. 597, and *Perkins's Estate,* 314 Pa. 49, 170 A. 255. We think none of these cases determines the question before us. In each of them there was a general testamentary power of appointment, but no alternative disposition in the event of the failure to exercise the power. A further distinction exists. Mrs. Buzby occupied the dual position of life tenant with general power to appoint, and trustee. Her estate is certainly liable to the succeeding trustee for her admitted breach of trust and conversion of the trust res. The fact that the surcharge will ultimately be for the benefit of her appointee, is not controlling. If the power had

not been exercised, it could not be successfully contended that Mrs. Buzby's estate was not liable for her breach of trust. As Judge SINKLER, in affirming the adjudicating judge, aptly said: ". . . a life beneficiary of a trust estate who has a general testamentary power of appointment, *and who is a testamentary trustee,* may not terminate the trust in whole or in part by appropriating the trust res." (Italics supplied.)

We recognize that a donee of a general power may appoint the trust property to her own estate or may deed it to a third party (*Lyon v. Alexander,* supra) but the rights granted fall short of those exercised by Mrs. Buzby. No case has been cited, and we know of none, that holds that a life tenant having a general power of appointment, with an alternative disposition, may consume the principal of the property during his lifetime, or prior to the exercise of the power. If that be the case it would entirely defeat the purpose of the donor and practically make the setting up of a power meaningless. Such a devise for life, with a general power to appoint, would be for all purposes equivalent to a fee, which is not the case.

In *Hagen's Estate,* 85 Pa. Superior Ct. 123, affirmed 285 Pa. 326, we said, p. 125: "Ordinarily the donee of a power of appointment, in the exercise of the power, disposes of the estate as that of the donor . . . ;" that under a general power of appointment, the donee may exercise the power so as to virtually amount to a gift of the fund to his own estate, but that is only when the power so to do is clearly manifested by the donor.

Prior to the donee's exercise of her power, the property covered thereby was not an asset of the estate and not subject to the claims of her creditors: 41 Am. Jur., p. 815, §14; 59 A. L. R. 1510, 97 A. L. R. 1071; 121 A. L. R. 803. Even the exercise of the power does not render the property part of the donee's general estate and subject to payment of his individual debts unless he manifests an intention to blend his own and the ap-

142

pointed estate: *Dunglison's Estate*, 201 Pa. 592, 51 A. 356; *Valentine's Estate*, 297 Pa. 99, 146 A. 453; *Stannert's Estate*, 339 Pa. 439, 15 A. 2d 360.

The decree of the court below is affirmed at appellant's costs.